Cushing, J.
This action is prosecuted by the plaintiffs to obtain a construction of the will of Richard Dymond, deceased. The admitted facts are that all the property of which the deceased died seized came to him by purchase; that the will in question is the valid last will and testament of Richard Dymond, deceased; that the will gave to Elizabeth G-lenn Dymond a life estate in all the property of the deceased, that is, she was to have the income of the entire estate during her life; but thát the widow, Elizabeth Glenn Dymond, elected to take under the law and she is entitled to have her share of the estate (one-third of the personal property and her dower interest in the real estate) distributed to her at this time.
The clauses of the will, the language of which it is claimed is uncertain are items six and seven of the will, but as these clauses can not be properly construed without reference to items two, three and four, they are here set out:
“Item 2. I hereby will and devise to my beloved wife Elizabeth Glenn Dymond, of the city of Cincinnati and state of Ohio, during her natural life the entire income of my estate, to include the income from every part of my estate from whatever source derived. The said income to be paid to her quarterly, at the end of each quarter after my decease.
“Item 3. I also will devise to my beloved wife, Elizabeth Glenn Dymond, during her natural life, our family residence No. 742 West Sixth street, Cincinnati Ohio. I also will and devise to her all our household goods of every kind to dispose of or distribute in any manner or way she may think best, including furniture, piano, paintings and statuary, jewelry, mirrors, bric-abrac, etc., these household goods shall not be regarded or accounted for as part of my estate for appraisement.
“Item 4. I will and devise to my brother, John Dymond of New Orleans, my undivided interest in their family home property No. 1305 Fourth street corner of Chestnut street, New Orleans, La.
“Item 6. I will and direct that after the death of my said wife, that my executors pay to St. Paul Methodist Episcopal Church,. S. W. Corner Seventh and Smith streets, Cincinnati, Ohio, the sum of five thousand dollars ($5,000) the same to be invested by-the trustees of said church as an endowment fund and the income to be applied towards the support of the said *508 church. This amount to be paid as soon as convenient after the death of my wife, at the discretion of my executors within three years. , , •.
“Item 7. After the death of my wife Elizabeth Glenn Dymond, and after providing for all the payments hereinbefore named, I will and devise one-half of my aforesaid estate then remaining to my brother John Dymond of New Orleans, and Belair, state of Louisiana, and the other or remaining half to his children then living and to the issue of any that may have died, the issue of such deceased child to take the share that such deceased child would have taken if then living. The proportionate division to each of the aforesaid children shall be as follows, to Helen Dymond Benedict two-sevenths (2-7) to Florence Dymond two-sevenths (2-7) to John Dymond, Jr., one-seventh (1-7) to William Dymond one-seventh (1-7) to Kichard Dymond, Jr., one-seventh (1-7). If there be no issue to a deceased child then the share of the deceased child shall be distributed to the brothers and sisters of the deceased child, divided in the proportion as named above.”
The contention of the plaintiffs is largely based on the language of Items 6 and 7, or rather upon the following words of the same, * * * “That after the death of my said wife * * * and the other or remaining half to his children then living, and to the issue of any that may have died.”
The bequest to the St. Paul Methodist Episcopal Church designated in the will is, “to be paid as soon as convenient after the .death of my wife,” etc.
The contention of plaintiffs is that this language means that the estate should be held by the executors until the death of his wife, and that thereafter the Central Trust & Safe Deposit Company, one of the plaintiffs herein, should distribute the estate as provided in the will. If this language stood alone plaintiff’s contention no doubt would be the true construction of the will. The language above quoted must be read and construed with reference to other parts of the will. The rule of construction of wills is that it is the duty of the court to ascertain and determine the testator’s intention as expressed in his will, and its application to existing facts and circumstances with which such intention deals. The presumption of law is that when Mr. Dymond executed this will, he knew the law, viz., that his wife had *509 the right to elect either to take under the law or under the will. Also that he had in mind who were his relatives by blood and marriage, and his duty to both. Reading the will as a whole it seems that the intention of the testator is clear, that he intended to provide for his wife for her life, and that all of his property, except a very small part, both real and personal, at her decease should go to his blood relatives, that is to his brother, and his brother’s children. The. clear intention of the testator was to create only a life estate in the property prior to its vesting in his blood relatives. • It probably never occurred to him that his wife would elect to take under the law and thus terminate such an estate. It is equally clear that he intended upon the termination of the estate thus created that all his property should be distributed at once to his legatees. There is no interest or right, present or future, in any one else. The entire beneficial interest of his property is the property itself, and when it is given, possession only is postponed. A court of equity will look to the purpose of the postponement. The testator’s purpose is apparent. It was to preserve the property together to secure the income of the same to his widow. No one else is benefitted in any way present or future by this provision and there is ‘no other purpose for it discernible in the will or suggested by the testator’s circumstances.
The law is that where a testator creates a life estate in his property, and the property is held for the purpose of securing to the life tenant the benefit devised to that tenant, and no other intention appears from the will of the testator, and in case the life tenant declines or is unable by reason of any legal incapacity to accept under the terms of the will, the life estate will be said to terminate and the period of payment will be accelerated. In other words, the termination of the life estate will determine the time of distribution of the remainder.
The doctrine of acceleration of remainders has been universally applied by the courts and upheld by the Supreme Courts of many states.
In the case of Holdren, Admr., et al v. Holdren et al, 78 O. S., 276, the court say:
*510 “Under the doctrine of acceleration of remainders a devise to A for life, and at his death to B, is to be read as a limitation of a remainder, to take effect in every event which removes the prior estate out of the way; but this doctrine rests on the presumed in-, tention of the testator and will be applied only when promotive of his intention.”
The case of Lainson v. Lainson, 18 Beav., 1, decided by Sir John Romilly, announces the same doctrine. The court say:
‘ ‘ The question is whether this creates an intestacy or an acceleration of the estate to the son of John Lainson; and I am of opinion that it is an acceleration of the estate to the son and not an intestacy. I have looked carefully at the authorities, and I am unable to distinguish the case where a person gives an estate to another and that fails, from the ease where the testator himself, directs that it shall fail; and although, the expression used is that the estate to the son of John Lainson is only to take effect ‘from and after John Lainson's decease,' I am of opinion that the meaning is ‘from and after the determination of his estate by death or otherwise.' In deciding thus, I fulfill the intention of the testator. It is expressly stated in the will that the testator did not intend the son to take the estate in addition to the annuity (which he would do if I were to hold there was an intestacy), but in lieu of it, the -result is that I must make a declaration that there is an acceleration of the estate to the eldest son of John Lainson.”
The doctrine of acceleration of remainders has been pronounced by many courts, and uniformly when the intention can be ascertained from the will and that intention was that the possession of the estate was postponed only for the purpose of the life estate, the doctrine of acceleration applies.
In the case of Shulz’s Estate, 113 Mich., 592, the court say at 593:
"The life estate in the widow was as effectually terminated by her election as it could be by her death. The will makes no provision for the care and control of the estate in the event that the life estate should be terminated by the election of the widow.”
In the case at bar no provision' is made in the will for the care and control of the estate between the termination of the life *511 estate and the death of the widow. In the absence of such a provision, I must apply the doctrine of acceleration.
The only other question contended for by plaintiffs is that part of the will which provides, “the remaining half to his children then living, and to the issue of any that may have died.”
Counsel for plaintiffs argues that this means that the estate shall be held by the executors until the death of the widow. His reason is that it is not clear from the will whether the testator intended that his property should go to his nephews and nieces, or whether it should go to the children of such nephews and nieces. It would be hard to reach such a conclusion from the terms of the will. It has been determined that language similar to that used in this will does not create any contingency whatever.
In the case of Small v. Marburg, 77 Md., 11, the language of the will was, in case of the death of either of his said brothers the share of said residue bequeathed to him was to go to his children. The court in construing that will uses the following language:
“That the words ‘in ease of death of either of my said brothers’ imported no contingency'whatever, and the title to the proceeds of the sale of the testator’s house vested in the residuary legatees at the time of the renunciation of the widow, and the title to the other property embraced in the residuum vested in them at the death of the testator.”
The evident intention of the testator was that the title and beneficial interest in the property should immediately vest in his brother and his brother’s children, but in case the wife elected to take under the will and in case of the death of any of the testator’s nephews and nieces, he directed how the estate should go in that event. The will does not mean that the property was to be held and given to the issue of such nephews and nieces.
In the case of Yeaton v. Roberts, 8 Foster (N. H.), 459, it is held:
“Where there is a devise or a legacy to several in succession, it does not lapse by the incapacity or refusal of the first devisee or legatee to take, but passes to him next in succession.”
*512 Also in the case of Holderby v. Walker, 56 N. C., 48, the court held:
"Where a husband willed his whole estate to his widow for life, with remainders over, upon the expiration of such life estate, and the widow dissenting from the will took a third of the estate, it was held that the remainders limited of the other two-thirds vested in possession immediately.”
I am of the opinion that the election of the widow, Elizabeth Glenn Dymond, to take under the law, terminated the life estate, and on said termination of the life estate $5,000 vested immediately in the St. Paul Methodist Episcopal Church, southwest corner of Seventh and Smith streets, Cincinnati, Ohio; and one-half of the remainder vested immediately in John Dymond, and the remaining one-half in the children of John Dymond named in the will and made parties hereto.
A decree ordering distribution according to this finding will be entered.