Small *vs.* Marburg.

(Decided 13th January, 1893.)

---

## MARY G. SMALL *vs.* THEODORE MARBURG.

*Specific performance of Contract for Sale of Land—Construction of Will—Effect of Renunciation by Widow—Conversion of Realty into Personalty.*

A testator bequeathed to his widow twenty thousand dollars a year, and devised to her for life his residence on Mount Vernon Place in the city of Baltimore, and all the furniture, pictures,

plate, horses, carriages, &c.; belonging to it, and then directed that at the death of his wife said residence should be sold, with all the furniture, paintings, and statuary, and the proceeds should fall into the residue of his estate. By the residuary clause of the will, the rest, residue and remainder of his estate, he directed and bequeathed to his two brothers in equal shares, and in case of the death of either of his said brothers the share of the said residue bequeathed to him was to go to his children. The testator appointed his said brothers and his cousin J. W. L. his executors. By the eighth clause of the will, the testator, in order to facilitate the settlement of his estate, gave to his executors full power and authority to sell, and convey any or all of his property not specially devised and bequeathed. The widow having filed her renunciation, it was agreed between her and the executors that, in lieu of dower and her interest in the personalty, she should receive $370,000 in securities of the deceased, to be selected by or for her, and also a conveyance of the house and lot on Mount Vernon Place, and all the furniture, plate, horses, carriages, and other personal chattels which were on the premises at the time of her husband's death. The selection of securities was made, and the Orphans' Court by an order authorized the executors to transfer to her the said securities and chattels; and the executors and residuary devisees and legatees executed and delivered to her a deed in fee of the Mount Vernon house and lot, and afterwards the wives of the residuary devisees and legatees, by joint deed with their husbands, released to her their dower rights in said house and lot. The widow also executed her release to the executors. The widow afterwards contracted to sell to M. the said house and lot, and he having declined to complete the purchase on the ground that she was unable to convey to him a clear, good and marketable title, a bill was filed by her against him for a specific performance of the contract. HELD:

1st. That when the widow elected to claim her legal rights in her husband's estate they were to be allotted to her in the same manner and to the same extent as if the will had never been made.

2nd. That the testator intended that his wife should have the right to occupy the Mount Vernon house during her life, and when her life estate terminated it was to be converted into money and fall into the residue of his estate.

3rd. That the time for the sale of said house had arrived when the widow extinguished her life estate by renouncing the bene-

fit of the will, and thereupon, in the contemplation of a Court of equity, it became personal estate and formed part of the residuum for distribution by the executors.

4th. That the words "in case of death of either of my said brothers" imported no contingency whatever, and the title to the proceeds of the sale of the testator's house vested in the residuary legatees at the time of the renunciation of the widow, and the title to the other property embraced in the residuum vested in them at the death of the testator.

5th. That the widow and the residuary devisees and legatees were competent to make the agreement. She agreed to take in satisfaction of her claims something which belonged to them, and they agreed to give it.

6th. That as by the eighth section of the will the executors were authorized, in order to facilitate the settlment of the estate, to convey any of the property, not specially devised or bequeathed, they had the right to deliver to the residuary legatees any portion of the estate belonging to them, without waiting for the ordinary forms of distribution, having of course first obtained an order from the Orphans' Court to that effect.

7th. That as the executors conveyed such right as they had, and which was held for the benefit of the residuary legatees, and was conveyed by their request, and with the knowledge and assent of the Orphans' Court, and the residuary devisees conveyed the bare legal title which they held, every possible interest in the house, and in the proceeds which might arise from its sale, was conveyed to the widow, and she therefore had a right to the excution of the contract of sale.

APPEAL from the Circuit Court of Baltimore City.

Mrs. Mary G. Small filed a bill in equity against Theodore Marburg for the specific performance of a contract of purchase of certain real estate in the City of Baltimore. The defendant resisted her bill on the ground that she was not able to convey a clear, good, marketable title to the property. And the validity of the defence depended on the will of the complainant's deceased husband, and certain proceedings consequent upon her renunciation of the devises and bequests made therein in her favor, and

her election to take her dower, or legal share of her husband's estate. The decedent bequeathed to his wife twenty thousand dollars a year; he also devised to her for and during the term of her life the house and lot known as No. 14 West Mount Vernon Place in the City of Baltimore, and all the furniture, pictures, plate, horses, carriages, etc., belonging to it, and then stated as follows: "At the death of my wife, I direct that my said residence No 14 West Mount Vernon Place, in Baltimore, shall be sold with all the furniture, paintings and statuary, and the proceeds shall fall in the residue of my estate." He gave her other property, but it is not necessary for any purpose of this case now to mention it. The residuary clause of the will was in these words: "The rest, residue and remainder of my estate, real and personal, wherever situated, whether in possession, reversion or remainder, I give, devise and bequeath unto my two brothers W. Latimer Small and Samuel Small in equal shares, and in case of the death of either of my said brothers, the share of the said residue bequeathed to him shall go to his children," and he appointed his said brothers and his cousin James W. Latimer, all of York, Pennsylvania, his executors. He gave to a number of his relations large sums of money to be held in trust for them on the terms mentioned in the will, and he directed his executors to select from his property stocks, bonds, ground rents, or securities, or real estate of the value in their judgment of the sums bequeathed; and the property so selected was to be the trust estate so to be held for the legatees respectively. The eighth clause of the will was as follows: "I direct that the said several selections of property hereinbefore directed to be set apart and held in trust, shall be made in the order hereinbefore specified, and from property not otherwise herein specially devised or bequeathed. And I authorize and empower my executors whenever

they shall deem it necessary or advantageous for the estate, or for the security of the trust funds, and property, to sell any part or the whole of either of said trust funds or property, and invest and reinvest the proceeds of such sale, and further, in order to facilitate the settlement of my estate, I give unto my executors full power and authority to sell, dispose of and convey any or all of my property, real or personal, not herein specially devised and bequeathed, without any obligation on the part of purchasers to see to the application of the purchase money, it being the intent and meaning hereof that my said executors shall have full power and authority to invest and reinvest, and change investments, and do all acts and execute all deeds and other instruments necessary therefor.'' These are the portions of the will which have a bearing on the questions in the case.

Mrs. Small having filed her renunciation it was agreed between her and the executors that in lieu of dower and her interest in the personalty, she should receive three hundred and seventy thousand dollars in securities of the deceased to be selected by or for her, and also a conveyance of the house and lot No. 14 West Mount Vernon Place, and all the furniture, plate, horses, carriages and other personal chattels which were on the premises at the time of her husband's death. The securities were selected by her agent under the supervision of her counsel, and the Orphans' Court of Baltimore City, by an order, authorized the executors to transfer to her the said securities and chattels. And the executors and residuary devisees and legatees executed and delivered to her a deed in fee simple of the Mount Vernon house and lot; and afterwards the wives of the residuary devisees and legatees by joint deed with their husbands, released to her their dower rights in said house and lot. Mrs. Mary Small also executed her release to the executors. The

controversy was about her title to the Mount Vernon property.

The cause was submitted for a decree on bill, answer and exhibits, and the Court (DENNIS, J.,) passed a *pro forma* decree dismissing the bill. The complainant appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, and McSHERRY, J.

*Arthur W. Machen,* (with whom was *S. Teackle Wallis,* on the brief,) for the appellant.

*George Whitelock,* and *Samuel D. Schmucker,* for the appellee.

BRYAN, J., after stating the case, delivered the opinion of the Court.

When Mrs. Small elected to claim her legal rights in her husband's estate, they were to be alloted to her in the same manner, and to the same extent as if the will had never been made. The title was in no way affected or impaired by any rights which could be derived from the will of the testator. As she was in all respects *sui juris* it was perfectly competent for her to make a valid adjustment and settlement of her claims, provided she dealt with parties who had title to the property about which they mutually contracted. It becomes necessary then, to inquire whether the property, which she received in satisfaction of her dower, and her distributive share of personalty, was conveyed to her by persons authorized to make a good transfer of the title. She renounced everything given to her by the will, and as a consequence all devises and bequests to her were annulled. They ceased to have any operation and effect; and it was necessary to regard them as if they had never been men-

tioned in the will, so far as the widow's rights were concerned. But it is proper to read the entire will for the purpose of ascertaining the testator's meaning; and the devises and bequests which had become inoperative by matter subsequent may serve to throw some light on the purposes, which the testator had in his mind at the time he made the will. He intended that his wife should have the right to occupy the Mount Vernon house during her life, and when her life estate terminated, it was to be converted into money and fall into the residue of his estate. It is evident that he postponed the sale of the property to the period of his wife's death for reasons altogether personal to her. He wished that she should have the occupancy of it; it was not his intention that it should remain a portion of his estate for any other purpose. He directed that it should be sold so soon as her occupation of it should become impossible by her death. When she refused to accept this provision for her, and her life estate consequently vanished, are we to suppose that the sale must still be postponed until her death? If it was to be sold at the termination of the life estate, the time of sale arrived when the life estate was annulled. But we prefer to reach the result of this question by resting on the obvious intentions of the testator; he wished to retain this house and lot in his estate for the comfort and convenience of his wife, and for no other reason. He did not desire to retain it after these purposes were accomplished, or after it became evident that they could not be accomplished. If it be said that the testator in terms declared that the sale should take place at the death of his wife, it may be replied that in his mind the death of his wife and the termination of her life estate marked the same point of time. And it may also be said that in a vast number of cases the literal meaning of words and phrases has been made to yield to the ascertained intention of the testator; and that this

will always be done when the meaning is sufficiently
evident.    In *Clark, et al. vs. Tennison, et al.*, 33 *Md.*,
93, the Court speak of several cases "in which the Courts
have, in the construction of wills, transposed or changed
words, or even supplied words omitted in the will, in
order to effect the intention of the testator, where that
intention is manifest on the face of the will."    And in
that case where a testator had devised to his wife all the
residue of his estate so long as she remained his widow,
and at her death he gave it to his children, it was held
that it was the plain intent that the widow should have
the property no longer than during her widowhood, and
that the will should be construed as giving the property
to the children at the termination of the estate given to
the wife, whether that should be by marriage or death.
We think then that the time for the sale of the Mount
Vernon house had arrived when the widow extinguished
her life estate by renouncing the benefit of the will.
Thereupon in the contemplation of a Court of equity it
became personal estate, and formed part of the residuum
for distribution by the executors ; in fact the conversion
into personalty was complete at the time of the death of
the testator, so far as the residuary legatees were con-
cerned, although the legal estate was vested in the re-
siduary devisees until a sale should be made.    *Riff and
Brinkley vs. Strite, et al.*, 54 *Md.*, 301, and many other
cases.    The residue of the estate real and personal was
devised to Latimer Small and Samuel Small, with a pro-
viso that in case of the death of either of them, the share
of the residue given to him should go to his children.
The words *"in case of death"* import no contingency
whatever.    Death is the great absolute certainty per-
taining to our existence; the time at which it may occur,
being uncertain, must be considered as the contingency
intended by these words.    And the period to which the
death is to be referred must be ascertained from the body

of the will.   We have said that the renunciation of the
widow determined the time for the sale of the house ;
and that thereupon the proceeds of the sale became part
of the residuum.   Upon the occurrence of this event the
title to these proceeds vested in the residuary legatees ;
the title to the other property embraced in the residuum,
of course, vested in them at the death of the testator.
These are the only points of time to which the will en-
ables us to refer the death of the residuary legatees.
The testator must have meant that if they died before
the period arrived for the vesting of the respective
estates devised and bequeathed to them, in such case
their children should take.   And this construction is in
accordance with what is held by the authorities in simi-
lar cases.   In 3 *Jarman on Wills, (5th Edition)*, 606, it is
said "it has become an established rule, that where the
bequest is simply to A, and *in case of his death* or *if he
die*, to B; A surviving the testator takes absolutely."
And at page 611 of same volume, it is said "where there
is another point of time to which such dying may be re-
ferred (as obviously is the case when the bequest is to
take effect in possession at a period subsequent to the
testator's decease) the words in question are considered
as extending to the event of the legatee dying in the in-
terval between the testator's decease and the period of
vesting in possession."

The widow and the residuary devisees and legatees
made an agreement which they were fully competent to
make.   She agreed to take in satisfaction of her claims
something which belonged to them, and they agreed to
give it.   It only remains to inquire whether it was
validly and lawfully conveyed to her.   In regular course
the executors were bound to make sale of the house and
collect the proceeds.   The residuary legatees were enti-
tled to these proceeds, as well as to the other part of the
residuum of the estate.   But the devolution of the title

was through the executors, whose duty it was to hold it until distribution was made; but by the eighth section of the will they were authorized, in order to facilitate the settlement of the estate, to convey any of the property not specially devised or bequeathed; so they had the right to deliver to the residuary legatees any portion of the estate belonging to them, without waiting for the ordinary forms of distribution, having, of course, first obtained an order from the Orphans' Court to that effect; and they could under the same condition convey it to any persons designated by these legatees. The Orphans' Court being informed of the agreement as to the settlement of Mrs. Small's claims, by consent and request of all parties in interest orders the delivery to Mrs. Small, the nominee of the legatees, certain securities in part performance of the agreement. It could not order a conveyance of the legal title of the house, but it would necessarily have ordered the payment to her of the proceeds of sale, when sold by the executors so as to carry into execution the agreement which they had approved, and which by their authority had been partly performed. Now let us ask if there was any necessity in law or reason for the barren form of a sale of the house, when the person entitled to the proceeds, did not wish a sale, but desired to have the house itself. The house in equity was personal property and to that extent under the control of the executors who had the right to change the equitable conversion into an actual one by a sale; but this actual conversion would be for the benefit of the legatees. Until the sale was made the naked legal title was vested in the residuary devisees, who were the same individuals as the residuary legatees. Now the executors convey such right as they have, and which is held for the benefit of the residuary legatees, and is conveyed by their request, and with the knowledge and assent of the Orphans' Court; and the residuary devisees convey the

bare legal title which they held.    Thus every possible interest in the house and in the proceeds which might arise from its sale was conveyed to the widow.    Where a person holds the legal title to the house, and the equitable title to the amount for which it might be sold, no Court of justice would decide that he was obliged against his will to submit to a sale for the purpose of receiving the proceeds.    It is not necessary to consider such a proposition.    As the residuary legatees and the residuary devisees were the same persons, they held every interest in the house, legal and equitable, and they could undoubtedly have prevented a sale of the house.    We do not see that Mrs. Small (the widow) lacks anything to complete her title; she therefore has a right to an execution of the contract of sale.

> *Decree reversed and cause remanded for a decree in accordance with the opinion of the Court; the costs in this Court to be equally divided between the parties.*

(Decided 13th January, 1893.)