Syllabus.

### Richmond.

COMPTON AND OTHERS V. RIXEY'S EXECUTORS AND OTHERS.

March 13, 1919.

1. WILLS—*Remainders and Reversions—Acceleration—Case at Bar.*
—Testator directed that upon the majority of his youngest
child, his wife being alive and unmarried, one-third of the in-
come of his estate should be paid over to his wife as long as
she lived and remained his widow, and the remaining two-thirds
to be divided equally between his surviving children and the
descendants *per stirpes* of such as might be dead leaving de-
scendants. Upon the death of. his wife, or her marriage, his
youngest child being of age, he directed his entire estate to go
to and be divided equally between his children then living and
the descendants *per stirpes* of such as might be then dead with
issue surviving. After accepting the provision of the will and
enjoying the benefit thereof for a period of seven years, the
widow executed a renunciation of her life estate in the estate
of the testator. At the time of the death of the testator he had
four living children, all of whom were still living and had at-
tained the age of twenty-one years at the date of the renuncia-
tion by his widow. After the renunciation, these children
called upon the executors of the estate for a settlement of their
executorial accounts, and a delivery to them of the testator's
estate, which delivery the executors declined to make, and
thereupon they instituted suit to compel such delivery. The cir-
cuit court dismissed their bill, upon demurrer, on the ground
that the complainants had contingent and not vested re-
mainders, and that nothing they had done or could do, could
operate to accelerate the time fixed by the testator for the
distribution of his estate.

*Held:* There was no error in the decree of the circuit court.

2. WILLS—*Election by Widow—Time.*—After accepting the provis-
ion of her husband's will and enjoying the benefit thereof for
a period of seven years, it is too late for the widow to claim
the provision made for her by statute.

3. WILLS—*Remainders and Reversions—Acceleration.*—Acceleration
is the hastening of the enjoyment of an estate which was other-

wise postponed to a later period, and the doctrine is only applied in furtherance, or in execution, of the presumed intention of the testator. It is never applied to defeat the testator's intention.

4. Wills—*Construction—Intention.*—The intention of the testator which is to be considered in the interpretation of his will is the intention spoken by the words of the will, where he has so spoken as to disclose his intention, and not the intention to be deduced from speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at time of the execution of his will. The latter would amount to making a will for him, and not be the interpretation of a will he has made. When he says I wish A to take my estate at a designated time, it cannot be said that he meant that B should take it at a different time.

5. Wills—*Remainders and Reversions—Determination of Beneficiary.*—In the instant case the testator designated the remaindermen who were to take upon the death or remarriage of his wife as "my children then living and the descendants *per stirpes* of such as may be then dead with issue surviving." The wife being still living and not remarried, it would be impossible to tell until the happening of the event which is to terminate the particular estate, which of his children will answer the description of being "then living."

6. Wills—*Remainders and Reversions — Acceleration.* — There are many cases holding that where the remainder is vested, and it is apparent that the only object of postponing the remainderman is that the property may be enjoyed by the tenant for life, as where an estate is given to A for life and after his death to B, so that it is manifest that A and B are to take the whole estate, on the termination of the estate of the life tenant in any way, or his incapacity or refusal to take, the estate of the remainderman will be accelerated. Here the testator's intention is inferred from the language of the will.

7. Wills — *Remainders and Reversions — Acceleration.* — But even where the remainder is vested, it does not necessarily follow that the time of enjoyment will be accelerated. We are still to seek to ascertain the intention of the testator from his will read as a whole, and acceleration may not comport with that intent. There may be vested remaindermen for different parts of the estate, or vested remaindermen and residuary legatees, and perhaps other situations, where acceleration would not accord with the testator's intention, and will not be accorded.

8. Remainders and Reversions—*Contingent or Substitutionary— Acceleration.*—A remainder to a person after a life estate to a third person, or if such person be then dead to his heirs, is not contingent, but substitutionary, and the mention of his

heirs is intended to prevent a lapse in. the event of the death of the remainder in the lifetime of the life tenant, and if the particular estate ceases to exist in the lifetime of the tenant for life, the remainder of such person may be accelerated under like conditions as a vested remainder.

9.   REMAINDERS AND REVERSIONS—*Contingent Remainders—Acceleration.*—There can be no acceleration of a contingent remainder, for until happening of the contingency it is uncertain who is to take the estate.  But where the contingency is the death of a life tenant, the courts have been very liberal in declaring that whatever terminates the life estate or prevents it from taking effect, is equivalent to the death of the life tenant. But this holding is based upon the presumed intention of the testator, and if such presumption is not warranted by the language of the will, construed in the light of the circumstances surrounding the testator, it will not be made.

10.   REMAINDERS AND REVERSIONS—*Acceleration.*—Where it appears that the life tenant and the remainderman are sufficiently designated, and it was intended they together should take the whole estate, acceleration will be accorded the remainderman whenever the life estate is eliminated in any manner whatever, for such must have been the intention of the testator.

11.   REMAINDERS AND REVERSIONS—*Contingent Remainders—Substitutionary Gifts.*—Where a clause in a will provided that upon the death or remarriage of the testator's wife his estate should be equally divided between his "children then living and the descendants *per stirpes* of such as may be then dead with issue surviving," the gift over was not substitutionary, but created contingent remainders in the persons mentioned therein, who took as purchasers under the will; and only those children who were living at the death or remarriage of the wife answer the description of donees under this clause, and the renunciation of the wife is not the equivalent of her death.

Appeal from a decree in the Circuit Court of Fairfax county.  Decree for defendants.  Complainants appeal.

*Affirmed.*

The opinion states the case.

*Jos. F. Moore,* for the appellants.

*R. E. Thornton, John S. Barbour* and *H. Thornton Davies,* for the appellees.

BURKS, J., delivered the opinion of the court.

This case involves the construction of the will of Jno. F. Rixey. The fourth and fifth clauses of the will are as follows:

"Fourth—Upon the majority of my youngest child, my wife being alive and unmarried, I direct one-third of the net annual income from my entire estate, comprising that mentioned in the third as well as in the second clause hereof, to be paid over to my wife, as long as she lives, and remains my widow, and the remaining two thirds to be divided equally between my surviving children and the descendants *per stirpes* of such as may be dead leaving descendants.

"Fifth—Upon the death of my wife, or her marriage, my youngest child living being of age, I direct my entire estate to go to and be divided equally between my children then living and the descendants *per stirpes* of such as may be then dead with issue surviving."

After accepting the provision of the will and enjoying the benefit thereof for a period of seven years, the widow executed, acknowledged and caused to be recorded the following paper:

"Know all men by these presents, That I, Ellen B. Rixey, widow of the late John F. Rixey, deceased, for reasons satisfactory to myself and which are known to my children, do hereby forever renounce and disclaim all my life estate in the estate of the said John F. Rixey, deceased, and all right, title and interest of whatsoever nature therein given to me by the provisions of the will of my late husband, the said John F. Rixey, which is of probate in the clerk's office of the Cidcuit Court of Culpeper, Virginia. And I do renounce and disclaim all right, title and interest of whatsoever nature to which I am now entitled in said estate, whether under the said will or by way of dower or widow's portion. I do hereby bind myself and declare that I will not accept, either at present or in the future, from the executors, their successors or assigns, any portion of the income of said

estate or any interest therein which may be sought to be paid to me in accordance with any right, title or interest which I had at any time before the execution of this instrument, it being my intention in executing this instrument to terminate my life estate in the estate of the said John F. Rixey as effectively as would my death.

"In witness whereof, I hereunto set my hand and seal this ninth day of June, 1916.

ELLEN B. RIXEY (SEAL)

[1]   At the time of the death of the said John F. Rixey he had four living children, all of whom were still living and had attained the age of twenty-one years at the date of the renunciation by his widow. After the renunciation, these children called upon the executors of the estate of said Rixey for a settlement of their executorial accounts, and a delivery to them of the testator's estate, which delivery the executors declined to make, and thereupon they instituted this suit to compel such delivery. The circuit court dismissed their bill, upon demurrer on the ground that the complainants had contingent and not vested remainders, and that nothing they had done or could do, could operate to accelerate the time fixed by the testator for the distribution of his estate. We are of opinion that the decree of the circuit court is right.

[2]   The widow relinquished the provision made for her by her husband's will, and it was too late for her to claim the provision made for her by the statute. Her children claimed that her renunciation was equivalent to her death, and that by such renunciation the remainders to them became vested and their enjoyment thereof accelerated.

[3-5]   Acceleration is the hastening of the enjoyment of an estate which was otherwise postponed to a later period, and the doctrine is only applied in furtherance, or in execution, of the presumed intention of the testator. It is never applied to defeat the testator's intention. The inten-

tion of the testator which is to be considered in the interpretation of his will is the intention spoken by the words of the will, where he has so spoken as to disclose his intention, and not the intention to be deduced from speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at the time of the execution of his will. The latter would amount to making a will for him, and not be the interpretation of a will he has made. When he says I wish A to take my estate at a designated time, we have no right to say that he meant that B should take it at a different time. If we could call upon him to say what he meant, he might, and probably would say, I meant what I said. In the case in judgment, the testator designates the remaindermen who are to take upon the death or re-marriage of his wife as "my children then living and the descendants *per stirpes* of such as may be then dead with issue surviving." The wife is still living and has not remarried, and no one can tell until the happening of the event which is to terminate the particular estate which of his children will answer the description of being *"then living."* As said in *Blatchford* v. *Newberry,* 99 Ill. 11, 46, "surviving at the time of distribution is a part of the description given by the will of the donees, and there is no gift to anyone who does not answer the description in this element of time—who is not at that time living." The children of the testator took, under the will, contingent. not vested remainders. *Howbert* v. *Cauthorn,* 100 Va., 649, 42 S. E. 683; *Smoot* v. *Bibb, ante,* p——, 97 S. E. 355; *Purdy* v. *Hoyt,* 92 N. Y. 446.

[6, 7] There are many cases holding that where the remainder is vested, it is apparent that the only object of postponing the remainderman is that the property may be enjoyed by the tenant for life, as where an estate is given to A for life and after his death to B, so that it is manifest that A and B are to take the whole estate, on the termination of the estate of the life tenant in any way, or his

incapacity or refusal to take, the estate of the remainder-man will be accelerated. Here the testator's intention is inferred from the language of the will. *In re Rawlings Estate,* 81 Iowa, 701; 47 N. W. 992; *Clark* v. *Tennison,* 33 Md. 85; *Hinkley* v. *House of Refuge,* 40 Md. 461, 17 Am. Rep. 617; *Augustus* v. *Seabolt,* 3 Met. (Ky.) 155; *Jull* v. *Jacobs,* L. R. 3, Chay. D. 711. But even where the remainder is vested, it does not necessarily follow that the time of enjoyment will be accelerated. We are still to seek to ascertain the intention of the testator from his will read as a whole, and acceleration may not comport with that intent. There may be vested remaindermen for different parts of the estate, or vested remaindermen and residuary legatees, and perhaps other situations, where acceleration would not accord with the testator's intentions, and will not be accorded. In *Jones* v. *Knappen,* 63 Vt. 391, 22 Atl. 630, 14 L. R. A. 293, the widow renounced the provisions of her husband's will and took what the law gave her, and thereby destroyed the whole scheme of distribution of her husband's estate, and although certain legacies were vested, their payment was not permitted to be accelerated because it would be detrimental to the interests of the residuary legatees and for that reason did not accord with the presumed intention of the testator. See also *Wood* v. *Wood,* 1 Metc. (Ky.) 512; *Dean* v. *Hart,* 62 Ala. 308. In *Gallaher's Appeal,* 87 Pa., 200, it was held: "Where a widow elects not to take under the will, her substituted devises and bequests are a trust in her for the benefit of the disappointed claimants to the amount of their interests therein. A court of equity will sequester the benefit intended for the wife to secure compensation to those whom her election disappoints."

In *McReynolds* v. *Counts,* 9 Gratt, 242, the testator gave a tract of land to his wife for life with remainder in fee to his son, Isaac. He directed his personal estate to be divided into eight equal shares, one of which he gave to each of his seven living children, and the other to a child of a deceased

son. The widow renounced the provisions made for her by the will and thereby destroyed the whole scheme of testamentary disposition. One-third of the tract of land was assigned to her as dower. The widow by her renunciation of the will disappointed the legatees in respect to one-third of their respective legacies and by her waiver she gave up a life estate in two-thirds of the real estate, and it was said that familiar principles of equity authorize and require courts of chancery jurisdiction to sequestrate the property thus given up, and apply its profits to indemnify the disappointed legatees, and that after these legatees had been indemnified for their disappointment, the two thirds of the land should pass into the hands of Isaac Reynolds, the remainderman. To this extent, but to this extent only, the vested remainder of Isaac was accelerated.

[8] A remainder to a person after a life estate to a third person, or if such person be then dead to his heirs, is not contingent, but substitutionary, and the mention of his heirs is intended to prevent a lapse in the event of the death of the remainder in the life-time of the life tenant, and if the particular estate ceases to exist in the life-time of the tenant for life, the remainder of such person may be accelerated under like conditions as a vested remainder. *In re Disston's Estate,* 257 Pa. 537, 101 Atl. 804; L. R. A. 1918B, 62; *Small* v. *Marburg,* 77 Md. 11, 25 Atl. 920; *Schulz's Estate,* 113 Mich. 592, 71 N. W. 1079; *In re Woodburn's Estate,* 151 Pa. 587, 25 Atl. 145.

[9] There can be no acceleration of a contingent remainder, for until happening of the contingency it is uncertain who is to take the estate. 16 Cyc. 651. But where the contingency is the death of a life tenant, the courts have been very liberal in declaring that whatever terminates the life estate or prevents it from taking effect, is equivalent to the death of the life tenant. But this holding is based upon the presumed intention of the testator, and if such presumption is not warranted by the language of the will, construed in

the light of the circumstances surrounding the testator, it will not be made. It has arisen most frequently in the con- struction of wills where a wife is given a life estate, followed by a remainder to take effect at her death and the wife re- nounces the provision made for her, and takes what the law accords her, and thereby defeats the testator's scheme for the distribution of his estate. Generally, the remainder has been either vested, defeasible or an estate to one person followed by a substitutionary gift, and the courts have found a presumed intention on the part of the testators that the renunciation of wife was equivalent to her death, and have applied the doctrine of acceleration.

. Quite a number of such cases have come before the Su- preme Court of Pennsylvania, some of which have been hereinbefore cited in another connection, but they all recog- nize the rule that the application of the doctrine must be in furtherance of the intention of the testator, and never in contravention thereof. Many of these cases were brought under review by that court in 1917 in the case of *In re Diss- ton's Estate,* 257 Pa. 537, 101 Atl. 804, L. R. A. 1918B, 62. In that case there was a life estate to the wife, with remain- der after her death to the testator's children, or if any of the children were dead leaving issue, the parent's share was to go to such issue. If no issue, to certain nephews and nieces or their issue. The court regarded the gift over to the issue of the children or to the nephews and nieces as substi- tutionary. Referring to other cases, it said, among other things, that the fact that alternate remainders may be pro- vided for in the event of the decease of such children in the life time of the widow, will not take a case out of the gen- eral rule, if on a view of the whole will or the particular part in question, such alternate remainders appear to be merely secondary or substitutionary in character. It was conceded all through the opinion, however, that if the in- tention of the testator can be gathered from the will, it must prevail, and, considering the facts of the particular

case before it, it was said that the literal provisions of a will may be departed from so as to carry out what appears to be a superior or preferred intent; but, when this is done, the object in view must always be "To approximate as clearly as possible to the scheme of the testator, which has failed by reason of intervening rights or circumstances." It was further said that the effort must be to find and carry out the testator's chief intention with the minimum disturbance of the general plan of the will, and that after the provisions for the wife, the testator's children were the natural and primary objects of his bounty, and not their issue, still less nephews and nieces or their issue, and that the alternate provisions for others, after the testator's children, were undoubtedly intended as substitutionary, in case the latter died during the life of the mother, should she take under the will; but that a testator is presumed to know that a widow's statutory rights are paramount, and that she may take against his will and that a testator is presumed to know also the general rule that the election of a widow to take under the intestate laws is equivalent to her death, and that unless his will plainly indicates a contrary intent, remainders are accelerated accordingly.

It was said, however, in the course of the opinion "Of course an intent that there shall be no acceleration may be shown by inevitable implications," and among other instances given is "Where the contingency upon which the remaindermen are to take is such, that in the nature of things the person entitled can be ascertained only by the physical death of the widow."

The same view was taken in *Schulz's Estate,* 113 Mich., 592, 71 N. W. 1079, where there was a substitutionary provision. The holding is based on *Woodburn's Estate,* 151 Pa. 587, 25 Atl. 145; *Coover's Appeal,* 74 Pa. 143, and *Small* v. *Marbury,* 77 Md. 11, 25 Atl. 920.

There have been similar holdings in Maryland (*Small* v. *Marbury, supra; Randall* v. *Randall,* 85 Md. 430, 37 Atl.

209), but there, as elsewhere, the holdings have been based upon the presumed intention of the testator, and always in subordination to that intention when it could be discovered. In *Rogers Trust Estate,* 97 Md. 674, 677, 55 Atl. 679, 680, it is said "The doctrine of the acceleration of estates is founded upon the desire of courts of equity to give effect to the manifest intention of the testator, and when such intention would be frustrated by allowing it. it will be denied. The cases are too numerous to do more than refer to some of the leading cases in this State." Then follows a citation of seven Maryland cases.

[10]    The principle underlying this class of cases seems to be that wherever it appears that the life-tenant and the remainderman are sufficiently designated, and it was intended they together should take the whole estate, acceleration will be accorded the remainderman whenever the life estate is eliminated in any manner whatever, for such must have been the intention of the testator.

The case of *Blachford* v. *Newberry,* 99 Ill., 11, involved a large estate and was most elaborately argued, and carefully considered. The testator gave his wife an estate for her life and provided that immediately after the decease of his wife, the trustees mentioned in the will should divide his estate into two equal shares and at once proceeded to distribute one of such shares among "the lawful surviving descendants of my own brothers and sisters, such descendants taking *per stirpes* and not *per capita,*" and the other to a public library. The widow renounced the will and took the provision made for her by the statute. During the lifetime of the widow, the then living descendants of the brothers and sisters, claiming that the renunciation of the widow was equivalent to her death, insisted that there should be acceleration of the enjoyment of their estates. The court said: "the question for determination is, can there be now, during the lifetime of Mrs. Newberry, a legal division of the estate, by the trustees, one half to the descendants of the tes-

tator's brothers and sisters, and the other half to the public library." This question the court answered in the negative. In the course of the opinion of the court, it is said: "Under the form of gift here there is no gift to any one except such as are surviving and capable of taking at the time of distribution. Surviving at the time of distribution is a part of the description given by the will of the donees, and there is no gift to any one who does not answer the description in this element of time—who is not at that time living. The donees, then, here, are the descendants living at the time of distribution, whenever that time may be. * * * Until the time of distribution it is uncertain who will be alive to take then, and until that time arrives it cannot be ascertained and made certain who the donees are."

Further, "this doctrine of acceleration, however, is not an arbitrary one, but is founded on the presumed intention of the testator that the remainderman should take on the failure of the previous estate, notwithstanding the prior donee may be still alive, and is applied in promotion of the presumed intention of the testator and not in the defeat of his intention. And when it is the evident intention of the testator that the remainder should not take effect till the expiration of the life of the prior donee, the remainder will not be accelerated."

Three of the eight judges sitting in this case dissented, but the conclusion of the majority of the court seems to be approved in *Slocum* v. *Hagaman*, 196 Ill., 533, 539, 52 N. E. 332. In the latter case, there was a substitutionary gift, and the renunciation of the wife was held, under the circumstances, to be equivalent to her death, and acceleration was accorded in favor of those designated to take after the death of the wife.

In *Augustus* v. *Seabolt*, 3 Metc. (Ky.) 155, there was a gift of property to a wife for life, with remainder to the children of the testator's brother, "or such of them as may be living at the time of her death." The will also provided

that as to certain designated land the estate given the wife should cease upon the remarriage of the wife, and she did remarry. The wife claimed no further interest in this land but the heirs of the testator and the brother's children aforesaid each claimed that they were entitled to it from the date of the remarriage till the death of the widow. The court said: "But it is said that the remainder interest of the devisees was a vested one, and took effect as completely upon the marriage of the widow as though she had died. This view is clearly erroneous. The remainder is manifestly contingent in one respect, and cannot, therefore, be properly denominated a vested remainder."

"Here the estate in remainder is limited to take effect upon the happening of a certain event, that is the death of the widow; but it is limited to such of the children of the brothers designated, as shall be living at her death. Whether any of such class will be then alive, or if so, how many, is of course uncertain, and cannot be known until the event occurs." The court refused to accelerate the enjoyment of the estate by the brother's children, because it regarded their estates as contingent until the death of the widow.

In *Brandenburg* v. *Thorndike,* 139 Mass. 102, 28 N. E. 575, there was a gift to the wife for life, and upon her death "one share to each of my following nieces and nephew then surviving," (naming them) and "one share to the issue of each of said nieces and nephew then deceased, and leaving issue then surviving, according to their right of representation." The widow renounced the will and the nieces and nephew sought acceleration, but the court said "We must construe the bequest in favor of the nieces and nephew in the same manner as if the widow had accepted the provisions of the will. Referring to this bequest, it is clear that it cannot now be determined who will take under it. It is a bequest to the nieces and nephew 'then surviving,' and to the issue of each niece and nephew 'then deceased leaving issue then surviving.' It cannot be known that any of the

nieces and nephew now living will take anything under this bequest."

To the same effect is *Lovell* v. *Charlestown*, 66 N. H. 584, 32 Atl. 160. We have examined many more cases from other States, but those cited are sufficient to show the trend of the decisions in other jurisdictions.

In *Poythress* v. *Harrison*, 1 Pat. & H. 197, a testator devised to his wife for life all his property, and at her death to certain devisees upon the condition that said devisees should raise the sum of one thousand dollars to be paid at the death of said testator's wife to Thos. P. Harrison, and in the event of his death before the said life tenant, the said sum was to be paid to his sister. Soon after the said will was probated, the widow renounced the provision made for her in the said will. Thereafter the said Thos. P. Harrison instituted suit to recover the said one thousand dollars, claiming the same by reason of the renunciation of the widow, who was still living.

The court denied Harrison the right to recover the said legacy of one thousand dollars for two reasons: "First, because the said legacy was not payable to him until after the death of Mrs. Poythress, the testator's widow, although she had renounced the provisions made for her in her husband's will; and, secondly, because the legacy, until after the death of Mrs. Poythress, was contingent, and if the appellee had died in her life-time, it would have been payable to his sister."

[11] Under the will of Mr. Rixey, if any one of his children should die in the lifetime of the widow, the descendants of such child would take as purchasers directly under his will, but if the renunciation of Mrs. Rixey is given the effect claimed for it, the child would take the estate now, and, if he should die in the life-time of the widow, his descendants would take nothing under the will of Mr. Rixey, although the will gives them the whole of it. The effect would be to make a will for Mr. Rixey. He has made his

71

own will and no relinquishment by Mrs. Rixey of what was given her can change the direction given by Mr. Rixey of the residue of his estate. In the case at bar, we conclude that the gift in the fifth clause of the testator's will to the "descendants *per stirpes* of such as may be then dead with issue surviving" is not substitutionary, but that said fifth clause creates contingent remainders in the persons mentioned therein; that they take as purchasers under the will; that only those children who are living at the death or remarriage of the wife answer the description of donees under said clause; that the renunciation of the wife in this case is not the equivalent of her death; that it does not in any way affect or disturb the scheme of the testator in the distribution of his estate, but is simply a relinquishment to the estate of the testator of all interest of the wife therein, without receiving anything in lieu thereof; and that there can be on acceleration of the enjoyment of the remainders created by said clause.

The decree of the circuit court will, therefore, be affirmed

*Affirmed.*