WILMINGTON TRUST COMPANY, as Trustee under an Agreement dated September 22, 1930, by and between Margaretta duPont Carpenter and Wilmington Trust Company,

*vs.*

MARGARETTA DUPONT CARPENTER, LOUISA D'A. CARPENTER, IRENE CARPENTER MORGAN, ROBERT R. M. CARPENTER, JR., WILLIAM K. DUPONT CARPENTER, RENEE CARPENTER KITCHELL, MARGARETTA DUPONT KITCHELL, NANCY GARDINER KITCHELL, CAROL VICTORIA KITCHELL, LESLIE HALSEY KITCHELL, ROBERT R. M. CARPENTER, III, MARY KAYE CARPENTER, II, KEMBLE DUPONT CARPENTER, KIETH CARPENTER, BELLE MORGAN CARPENTER, and THE CARPENTER FOUNDATION.

*New Castle, October 11, 1950.*

412

*William Poole,* of Southerland, Berl & Potter, (Kenneth W. Gemmill and Barnes, Dechert, Myers & Clark, of the Philadelphia, Pa. bar, of counsel), for plaintiff trustee.

*Charles F. Richards* and *Robert H. Richards*, of Richards, Layton & Finger, for Margaretta duPont Carpenter, Louisa d'A. Carpenter (formerly Louisa C. Jenney), Irene Carpenter Morgan, Robert R. M. Carpenter, Jr., and William duPont Carpenter.

*Alexander L. Nichols*, of Morris, Steel, Nichols & Arsht, for Albert L. Massey, guardian *ad litem* for Renee Carpenter Kitchell, Margaretta duPont Kitchell, Nancy Gardiner Kitchell, Carol Victoria Kitchell, Leslie Halsey Kitchell, Robert R. M. Carpenter, III, Mary Kaye Carpenter, II, Kemble duPont Carpenter, Kieth Carpenter and Belle Morgan Carpenter, minors.

*Howard Duane*, for The Carpenter Foundation.

HARRINGTON, Chancellor: The plaintiff trustee under an agreement executed by Margaretta duPont Carpenter, dated September 22, 1930, seeks instructions with respect to the persons entitled to the income therefrom during the remainder of Mrs. Carpenter's life. That instrument in part provides (1) that the trust so created

"* * * shall continue until the death of the last survivor of the Settlor, Margaretta duPont Carpenter, Robert R. M. Carpenter, husband of the said Settlor, Pierre S. duPont, brother of the said Settlor, and Alice Belin duPont, wife of the said Pierre S. duPont;"

(2) That the trustees

"* * * pay over and deliver unto the said Robert R. M. Carpenter the entire net income of the trust estate for and during the term of his life and, upon his death, to pay over and deliver such entire net income unto the said Settlor, if she be then living, for and during the term of her life;

(3) "Upon the death of the said Robert R. M. Carpenter and the said Settlor, if the trust hereby created shall still be in existence, it shall be the duty of the said Trustee, until the termination of the trust hereby created * * *, to divide such net income into four equal parts and to pay over one of such equal parts unto each of the four children of the said Settlor, to wit, Louisa C. Jenney (now Louisa d'A. Carpenter), Irene duPont Carpenter (now Irene Carpenter Morgan), Robert R. M. Carpenter, Jr., and William K. duPont Carpenter, and

unto the lawful issue of any of them that may be deceased leaving lawful issue her or him surviving, such lawful issue to take, equally among them if more than one, his, her or their parent's share of such net income;  * * *

(4) "No part of the principal or income of the trust estate hereby created shall be subject to the control, debts, liabilities, and/or engagements of any of the beneficiaries thereof and no part of such principal or income shall be subject to assignment or alienation by them or any of them, nor to execution or process for the enforcement of judgments or claims of any sort against such beneficiaries or any of them.  All payments of income from said trust estate shall be made only as the same accrue and not by way of anticipation.  It is hereby expressly understood and agreed that any attempt to so anticipate, alienate or assign shall not be binding upon the Trustee and shall be wholly disregarded by the Trustee."

The trust corpus is substantial, consisting of 45,000 shares of the common stock of Delaware Realty & Investment Corporation and of other securities and cash of the face amount of approximately $68,000.

On February 24, 1947, and April 16 of the same year, Margaretta duPont Carpenter executed and delivered to the plaintiff trustee certain documents which stated, in substance, that if at any time there should be no one entitled under the terms of the said trust agreement of September 22, 1930, to receive the principal or the income from the trust created thereby, it should be paid over absolutely to The Carpenter Foundation and should not revert to her, or to her heirs, executors or administrators.  She further stated that these directions should not affect the life estate in the trust reserved to her.

Robert R. M. Carpenter died June 11, 1949, survived by his wife, Margaretta duPont Carpenter, the settlor of the trust, to whom the plaintiff trustee paid the income therefrom after his death until January 10, 1950.  Pierre S. duPont, the brother of the settlor, is living.  The four children of Mrs. Carpenter are also living and of age.  The living issue of such children are the defendants, Renee Carpenter Kitchell, Margaretta duPont Kitchell, Nancy

Gardiner Kitchell, Carol Victoria Kitchell, Leslie Halsey Kitchell, Robert R. M. Carpenter, III, Mary Kaye Carpenter, II, Kemble duPont Carpenter, Kieth Carpenter and Belle Morgan Carpenter, all of whom are minors.

On the same day that Margaretta duPont Carpenter created the trust in question by the said agreement dated September 22, 1930, Robert R. M. Carpenter, her husband, likewise created a similar, though smaller, trust from which Mrs. Carpenter was to receive the income during her lifetime, and on her death the income was to be paid to Robert R. M. Carpenter should he survive her.

It is unnecessary to state the tax status of such trusts created in 1930 and their subsequent history. It is sufficient to state that on October 24, 1949, and more than four months after the death of Robert R. M. Carpenter, the Congress of the United States enacted what is known as the "Technical Changes Act of 1949", which was duly approved by the President. *Section* 8 of that Act, *Public Law* 378, 81st Congress, Act Oct. 25, 1949, *Chapter* 720, 26 *U.S.C.A.* § 811 *note,* provides:

"In the case of a transfer of property made prior to June 7, 1932, under which the grantor retained (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom, then an assignment by the grantor of such possession, enjoyment, or right to income, or a relinquishment by him of such right of designation, shall, if made in 1949 or 1950, not be deemed a transfer of property for the purposes of chapter 4 of the Internal Revenue Code, and shall, if made prior to 1951, not be deemed to have been made in contemplation of death within the meaning of chapter 3 of such code. The foregoing provisions shall not apply—

"(A) if the transfer was made after March 3, 1931, and prior to June 7, 1932, and if the property transferred would have been includible in the grantor's gross estate upon his death by reason of the amendatory language of the joint resolution of March 3, 1931 (45 Stat. 1516); or

"(B) if the property transferred would have been includible in

the grantor's gross estate under section 811(d) of the Internal Revenue Code had he died on October 7, 1949."

Under certain circumstances, which do not exist here, the Internal Revenue Department of the United States, for the purpose of federal taxation, regards trusts such as were created by Margaretta duPont Carpenter and Robert R. M. Carpenter as reciprocal or cross trusts and holds that the wife is the settlor not of the trust which she actually creates but of the trust her husband creates and *vice versa*. Mrs. Carpenter was the actual settlor of the trust before the court, but counsel advised her that it could not be definitely stated which trust the Commissioner of Internal Revenue would rule was created by her though she should attempt to take the proper steps to relinquish her rights before 1951. On November 23, 1949, Mrs. Carpenter, therefore, applied to the Commissioner of Internal Revenue of the United States for a ruling and a closing agreement with respect to the tax status of the trust created by her in September of 1930. There was a favorable ruling by the Commissioner on January 9, 1950, and on the following day, January 10th, Mrs. Carpenter entered into a closing agreement with him which was approved by the Secretary of the Treasury February 23, 1950. Under this ruling and agreement, the Internal Revenue Department of the United States recognized Margaretta duPont Carpenter's right to relinquish her life interest in the income from the trust created by her, and by a renunciation or assignment prior to 1951, to cause such right to become vested in her children, or their issue, without any liability for the payment of gift taxes, provided that instrument was effective under the laws of Delaware to divest her right to such trust income. On January 10, 1950, Mrs. Carpenter executed and delivered to the Wilmington Trust Company, the plaintiff trustee, an instrument under seal which in part stated:

"I, the said Margaretta duPont Carpenter, for reasons satisfactory to myself and which are known to my children, do hereby forever renounce and disclaim all my life estate in the said trust estate and all right, title and interest of whatsoever nature therein given to me

by the provisions of the said trust instrument. I do hereby solemnly declare and affirm that I will not hereafter accept, either at present or in the future, from the trustee of said trust, its successor or assigns, any portion of the income of said trust estate, or any interest therein which may be sought to be paid to me in accordance with any right, title or interest which I had at any time before the execution of this instrument, it being my intention in executing this instrument to terminate my life estate in the said trust estate as effectively as would my death   *   *   *.''

In the same instrument, she further stated:

"I Margaretta duPont Carpenter, supplementing, but without in any manner limiting or conditioning the foregoing renunciation, do hereby give, grant, bargain, sell, release and convey my right hereafter to receive the entire net income from said trust estate during the term of my life, and all my right, title and interest of whatsoever nature, legal or equitable, absolute or contingent, vested or hereafter to accrue, in and to the said trust estate and any part thereof, unto my said four children, to wit, the said Louisa d'A Carpenter, Irene Carpenter Morgan, Robert R. M. Carpenter, Jr., and William K. duPont Carpenter, and unto the lawful issue of any of them that may be deceased leaving lawful issue her or him surviving, such lawful issue to take, equally among them if more than one, his, her or their parent's share of such net income, and if any of said children should die without leaving lawful issue surviving, the share of such net income of any child so dying shall be equally distributed among the remaining children and the lawful issue of any of them that shall have died leaving such issue, as provided for in said   *   *   *   trust agreement."

The questions on which the plaintiff trustee seeks instructions are:

(1)   Did the instrument executed by Margaretta du-Pont Carpenter on January 10, 1950 terminate her right to receive the income during her lifetime from the trust created by her on September 22, 1930?

(2)   If so, is such life income payable during the continuance of the trust to her four children and to the issue of any of them, *per stirpes,* who may die during her lifetime leaving children?

(3)   If Mrs. Carpenter's right to receive the income from the trust during her lifetime was terminated by the

instrument of January 10, 1950, must it be accumulated until her death and then paid to her' children and to their issue *per stirpes?*

(4) If Mrs. Carpenter's right to receive such income was so terminated by the instrument of January 10, 1950, is it payable to The Carpenter Foundation until her death?

In general, the right of a life beneficiary of a trust created by another person to refuse to accept its benefits has been recognized in this State. *Scotton v. Moore,* 5 *Boyce* (28 *Del.*) 545, 93 *A.* 373, *Ann. Cas.* 1918C, 409; *Equitable Trust Co. v. Proctor,* 27 *Del. Ch.* 151, 32 *A.* 2d 422. The textbooks make the broad general statement, however, that a beneficiary cannot renounce the gift after having accepted it. *Griswold, Spendthrift Trusts,* § 524; *Scott on Trusts,* § 337.7; 1 *Bogert, Trusts & Trustees,* § 173; but *cf. Compton, et al., v. Rixey,* 124 *Va.* 548, 98 *S.E.* 651, 5 *A.L.R.* 465. This would seem to depend upon the intent of the donor of the fund and is usually determined by the provisions of the instrument creating the trust. See *Blackwell v. Virginia Trust Co.,* 177 *Va.* 299, 14 *S.E.* 2d 301; *Malatesta's Estate,* 29 *Pa. Dist.* R 113. *Cf. Griswold, Spendthrift Trusts,* § 528. But this case is governed by somewhat different principles as Margaretta duPont Carpenter was both the settlor of the trust and after her husband's death the sole life beneficiary of the income therefrom.

Without determining whether spendthrift trusts were valid in this State prior to the enactment of *Chapter* 186, *Volume* 38, *Laws of Delaware,* some Delaware cases have apparently assumed they were. See *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del. Ch.* 188, 186 *A.* 903; *Wilmington Trust Co. v. Wilmington Trust Co.,* 25 *Del. Ch.* 193, 15 *A.* 2d 655. That question was not determined by *Gray, Administrator, v. Corbit,* 4 *Del. Ch.* 135, and it is unnecessary to determine it here. In any event, it is a settled rule of policy in most states which recognize spend-

thrift trusts that if a person creates such a trust for his own benefit and is not under some incapacity, he can terminate it at will so far as his interest is concerned, and compel a reconveyance of that interest. *Weymouth v. Delaware Trust Co.*, 29 *Del. Ch.* 1, 45 *A.* 2d 427; *Griswold, Spendthrift Trusts*, §§ 497, 498; 2 *Restatement, Trusts*, § 339. That rule was applied in the *Weymouth* case six years after the creation of the trust, though the agreement provided that it was irrevocable. Under its terms the income was payable to the settlor during his lifetime and at his death the principal was payable to his executors or administrators. The court in discussing the question said:

"A rule which seems more consistent with our law concerning revocability is that the mere existence of 'spendthrift trust provisions' in a trust created by the sole beneficiary should not prevent revocation." [29 *Del. Ch.* 1, 5, 45 *A.* 2d 429.]

Mrs. Carpenter could not terminate the trust as other persons had interests in the fund in remainder, and did not seek to compel a reconveyance of any interest. But in the formal renunciation of her rights in the instrument executed by her and delivered to the plaintiff trustee on January 10, 1950, she stated:

"It is my intention in executing this instrument to terminate my life interest in the trust as effectively as would my death."

Applying the above principles, that statement clearly and unequivocally indicated Mrs. Carpenter's intent and effectively terminated her life interest in the trust. *Cf. Griswold on Spendthrift Trusts*, § 528; *In re Bowers' Estate*, 346 *Pa.* 85, 29 *A.* 2d 519. Cases like *Claflin v. Claflin*, 149 *Mass.* 19, 20 *N.E.* 454, 3 *L.R.A.* 370, 14 *Am. St. Rep.* 393, are not in conflict with this conclusion. See *Griswold, Spendthrift Trusts, supra,* § 498.

It is true that *Chapter* 186, *Volume* 38, *Laws of Delaware,* enacted in 1933, *par.* 4415, *Revised Code* 1935, provides:

"Creditors and Assignees Of A Beneficiary Of A Trust:—The creditors of a beneficiary of a trust shall have only such rights against

such beneficiary's interest in the trust property or the income therefrom as shall not be denied to them by the terms of the instrument creating or defining the trustor (trust or) by the laws of this State; provided, however, that if such beneficiary shall have transferred property to the trust in defraud of his creditors the foregoing shall in no way limit the rights of such creditors with respect to the property so transferred. Every interest in trust property or the income therefrom which shall not be subject to the rights of the creditors of the beneficiary, as aforesaid, shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors. Every assignment by a beneficiary of a trust of his interest in the trust property or the income therefrom which is, by the terms of the instrument creating or defining the trust unassignable, shall be void."

Retroactive laws are not favored and statutes are not held to have that effect unless it clearly appears to have been the legislative intent. *Equitable Trust Co. v. Richards, (Del. Orph.) post p.* 564, 73 *A.* 2d 437. But it is unnecessary to determine whether *Chapter* 186, *Volume* 38, *Laws of Delaware,* was intended to be retroactive or, if it was, whether it could affect the Carpenter trust. See *Equitable Trust Co. v. Richards, supra.* In any event, its provisions have been construed strictly. *Weymouth v. Delaware Trust Co., supra;* see also *Tracey v. Curtis Franklin, post p.* .., 67 *A.* 2d 56.

The trust in the *Weymouth* case was created in 1940 and though the retroactive question was not before the court, the Vice Chancellor, in discussing the Delaware statute of 1933, said:

"This section deals specifically with restrictions upon the rights of creditors of a beneficiary with respect to trust property, and restrictions upon assignments by a beneficiary. Assuming, without deciding, that a settlor-beneficiary may, as the respondent argues, validly create such restrictions, this will not aid the respondent. The statute prescribes express consequences of restrictions of the particular kinds dealt with, and makes no mention of revocability. It would seem to me unwarranted to construe the language of the act as requiring the alteration urged by the respondent in the law otherwise applicable with respect to revocability * * * ." [29 *Del. Ch.* 1, 6, 45 *A.* 2d 429.]

The same reasoning leads to the conclusion that if the statute was applicable to this case, it did not prevent Margaretta duPont Carpenter from effectively renouncing her life rights under the trust created by her.

The solicitors for the parties disagree, however with respect to the proper disposition of the income from the trust fund during the remainder of Mrs. Carpenter's life. In the assignment part of the renunciation of January 10, 1950, she purported to grant and convey her life interest in the trust to her four named children, all of whom are living, and "to the lawful issue of any of them that may be deceased leaving lawful issue, her or him surviving * * *", as provided in said trust agreement. That part of the instrument was preceded by the statement "supplementing but without in any manner limiting or conditioning the foregoing renunciation." It is likewise unnecessary to determine, however, whether this was an effective assignment of Margaretta duPont Carpenter's life rights in the trust. As to the general powers of a settlor-beneficiary of a spendthrift trust in that respect, see *Griswold. on Trusts*, §§ 493, 494; *cf.* cases cited in *Weymouth v. Delaware Trust Co., supra.* In any event, upon the premature termination of a prior life right to the income from a trust fund, the rights of the succeeding beneficiaries will be accelerated unless contrary to the intent of the settlor of the trust. *Scotton v. Moore,* 5 *Boyce* (28 *Del.*) 545, 93 *A.* 373, *Ann. Cas.* 1918*C,* 469; *Equitable Trust Co. v. Proctor,* 27 *Del. Ch.* 151, 32 *A.* 2d 422; 2 *Restatement, Trusts,* § 231. That rule usually applies if the possession and enjoyment of the fund by other beneficiaries is merely postponed for the benefit of a life taker of the income. *Scotton v. Moore, supra; Equitable Trust Co. v. Proctor, supra.* It also applies even if there is a substituted gift to others should a subsequent beneficiary die prior to the death of the life taker. *Id.*

As was pointed out in *Scotton v. Moore, supra,*

"If the principle is based upon the presumed intention of the testator, there need be no distinction made between vested and contingent remainders in its application." [5 *Boyce* (28 Del.) 545, 93 *A.* 375.]

The income rights of Margaretta duPont Carpenter's children and the issue of any child who might have died leaving children, were to take effect in possession "upon the death of the said Robert R. M. Carpenter and the said settlor"; but I am not satisfied that the quoted words were intended to be a condition precedent to the acquisition of any rights whatever under the agreement.

In *Equitable Trust Company v. Proctor, supra,* the court said:

"Expressions used in connection with a gift of succeeding interests, such as 'after the death of', or 'then living', though they refer unequivocally to the time of the death of the donee of a prior interest, do not necessarily evince an intent contrary to acceleration upon renunciation by the donee of the prior interest." [27 *Del. Ch.* 151, 32 *A. 2d* 424.]

See also 2 *Restatement, Law of Property,* § 233, *Comment (b).*

From the language of the Carpenter agreement it seems reasonable to conclude that the possessory rights of the subsequent beneficiaries under the trust were merely postponed for the benefit of the prior life takers of the income and were accelerated on the premature termination of that interest. See *Equitable Trust Co. v Proctor, supra.* If any of Mrs. Carpenter's children should die during her lifetime their issue would take their shares of the income *per stirpes.* The settlor of the trust at least indicated her intent with respect to the rights of such beneficiaries when she executed the assignment of January 10, 1950. See *Griswold, Spendthrift Trusts,* § 528.

In *Blackwell v. Virginia Trust Company, supra,* the court held that, under its provisions, the acceleration of the rights of subsequent beneficiaries, on the renunciation of the life interest of a prior beneficiary under a spendthrift trust agreement, executed by another person would clearly defeat the intent of the settlor of the trust. Furthermore, under the law of Virginia, acceleration does not apply to

contingent interests. It follows that that case is not pertinent to the determination of this controversy.

On Margaretta duPont Carpenter's renunciation of her right to the income from the trust fund during her lifetime it was legally payable, in accordance with the provisions of the agreement, to her four named children, the next beneficiaries of the trust during their respective lives and cannot be held and accumulated by the trustee for them or their issue until her death. It follows that The Carpenter Foundation has no rights in the income from the trust accruing during Mrs. Carpenter's lifetime.

An appropriate order will be entered in accordance with this opinion.