ETTA A. WOODLEN, Trustee by Appointment of the Court of Chancery,

*vs.*

ANNA F. BRODNAX and THE BOARD OF PUBLIC EDUCATION IN WILMINGTON, a corporation under the laws of the State of Delaware.

*New Castle, March 13, 1948*

*Louis L. Redding,* for plaintiff.

*Morris Cohen,* of the firm of Cohen & Cohen, for the defendant Anna F. Brodnax.

*David F. Anderson,* City Solicitor, for Board of Public Education in Wilmington.

SEITZ, Vice-Chancellor: Edwina B. Kruse (hereinafter called the "testatrix") died June 23, 1930, leaving a will with a codicil, both apparently written in her own handwriting, which was duly probated on September 6, 1930. Letters of administration were subsequently granted and

a final account was passed by the Register of Wills on March 7, 1931. The portions of the will here pertinent read as follows:

"It is my desire, that after my debts are paid that whatever funds I die possessed of, that may be in the Union National Bank be transferred to the Savings Fund and the interest of said fund to [be] used as a scholarship to be known as the Edwina B. Kruse scholarship to be given to the boy or girl graduate of Howard High School, who shall desire to take a college course at a regular college or University. The faculty of Howard High School to decide upon the boy or girl best fitted by scholarship, intellectual ability and moral character, to be the recipient of such aid.

\* \* \* \* \* \*

"My house and lot situated at 206 East Tenth Street, I give and bequeath to my friend Alice Gertrude Baldwin, for her home as long as she lives. At her death the property to be sold and the money received from said sale to be added to the fund at the Wilmington Savings Fund Bank, known as the Edwina B. Kruse Scholarship fund."

These provisions were modified by a codicil which read as follows:

"My house, 206 E. Tenth Street I want to belong to both Alice G. Baldwin and Anna F. Brodnax equally, share and share alike during their life time, should they outlive me and in case of the death of either, the entire property shall belong to the other for her life time and at the death of both Alice G. Baldwin and Anna F. Brodnax the property shall be disposed of as in the first part of this will and the interest received from the same to be used as a scholarship for the boy or girl desiring to go to college and who is considered worthy by the faculty of Howard High School—".

The effect of the quoted provisions is that the testatrix gave Alice G. Baldwin and Anna F. Brodnax the use of the property known as 206 East Tenth Street for their lives. Thereafter, the property was to be sold and the proceeds of sale were to constitute a portion of the trust fund which was created to provide a college or university scholarship for some graduate of the Howard High School.

The proof demonstrates that the only money available for the creation of the trust fund is that which will be forthcoming from the sale of the Tenth Street property,

since there were no other assets in the estate available for that purpose.

The testatrix was the principal of the Howard High School for approximately forty years. This is a Public School in the City of Wilmington under the supervision of The Board of Public Education in Wilmington. Alice G. Baldwin, one of those designated in the will to have the use of the property for life, died about January 23, 1943. Sometime ago the physical condition of the other life tenant became such that she was unable to manage the real estate. Since there was no trustee named in the will to administer the scholarship fund, she petitioned this court for the appointment of a trustee to administer the trust, and requested that the trustee so appointed be authorized to sell the real estate and to assure her the benefit of her life interest out of the proceeds of the sale. On September 29, 1947, this court appointed Etta A. Woodlen, trustee, without passing upon the request of the life tenant that the property be sold.

The plaintiff trustee alleges in the present complaint for instructions that it would be in the best interest of all concerned for this court to authorize a sale of the property. She contends that the court has the power to authorize her as trustee to make such a sale.

In the event the court authorizes a sale, the plaintiff asks instructions concerning the following matters:

That the plaintiff be instructed as to her powers of investment as trustee with reference to the net proceeds arising from the sale of the real estate;

That plaintiff be instructed as to whether designation of the beneficiary of the trust should be made by unanimous or majority opinion of the faculty of Howard High School or by a subdivision or committee of the faculty;

That the plaintiff be instructed as to whether a graduate of Howard High School, in order to receive the benefit

of the trust, must be actually admitted to and/or in attendance at a college or university;

That the plaintiff be instructed as to whether a graduate of Howard High School once designated and having qualified to receive the benefit of the trust shall be entitled to receive it annually as long as such person continues a college course or whether a new beneficiary should be designated annually;

That the plaintiff be instructed whether the income from the trust may be paid direct to the beneficiary, if such person be a minor, or whether payment should be made to a college or university for the use of a minor beneficiary.

Answers have been filed by the life tenant and by The Board of Public Education, which in substance admit the allegations of the complaint, and join in the request for instructions as to the matters requested by the plaintiff. I shall first discuss the question of the trustee's request for authority to sell the real estate.

Under the authority of *Paragraph* 4403 of the *Revised Code of Delaware* 1935, this court in its discretion may authorize a trustee to sell trust property unless the sale "has been or may be expressly prohibited by the instrument creating the trust". The direction in the present will to sell the real estate upon the death of the last life tenant does not in my opinion constitute an express prohibition against an earlier sale. The need for a liberal construction of the power given by the statute has been recognized by this court. See *In re McComb's Will*, 25 *Del.Ch.* 118, 14 *A.2d* 421.

Since the life tenant has in effect joined with the trustee in a request for such a sale, I conclude that no more than a question of the exercise of judicial discretion under the statute is involved. Under the facts before me, I conclude that it would be in the best interest of the trust estate to authorize a public sale of the property by the trustee, if the life tenant joins in the sale. The net proceeds of the sale shall then be administered by the trustee and the income therefrom shall be paid to the life tenant during her life-

time. Although this amounts to a private trust during the lifetime of the life tenant, nevertheless, the trustee shall not receive any commissions payable out of principal during such period. The rule of court governing commissions to trustees of charitable trusts will apply thereafter.

The testatrix directed that the real estate was to be sold upon the death of the last life tenant and the proceeds were to be deposited in the "Wilmington Savings Fund Bank", which clearly means the Wilmington Savings Fund Society. The direction in the will as to how the money realized from the sale should be deposited did not purport to apply of course until the death of the last life tenant. However, although I have authorized an earlier sale, I believe we may consider the problem as though the direction as to the Wilmington Savings Fund Society is applicable to the proceeds realized from a sale at this time.

The testatrix obviously wrote her own will which was probably drawn no later than October 14, 1926. Aside from the changes in banking practices and interest rates which have occurred since that time, it is important to note that the Wilmington Savings Fund Society, as stated in its by-laws, will receive only small sums of money. Thus, it limits monthly deposits to $250. It is apparent to me from the appraisal that the sum which may be realized from the sale of the property will be many times the $250 maximum single deposit provided for by the Society. Consequently, if the trustee is to deposit the money in the Savings Fund, it is apparent that it will take her many months to do so. This will mean that the money must remain uninvested for a substantial period of time, even assuming that the Society will accept trust funds—contrary to its usual practice.

In the light of the foregoing facts, the trustee suggests that the investment specified by the testatrix is unavailable to the trustee with the consequence that she should be instructed as to the investment of the money realized from the sale. The trustee cites 2 *Scott on Trusts*, § 165, to the effect that where a trustee is directed to invest in a

manner which is not possible, he can properly invest in other ways compatible with his duty as trustee. However, I do not believe this is so much a question of impossibility as impracticability, as stated in 2 *Scott on Trusts*, § 167:

"It not infrequently happens that it is not impossible to comply with a term of the trust and that the term of the trust is not illegal or against public policy, but that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat the purposes of the trust.

\* \* \* \* \* \*

"Where it is impossible to interpret the trust instrument as permitting the trustee to do the act desired, the court may nevertheless permit the act under proper circumstances. In such a case the court exercises its jurisdiction to control the administration of the trust, not by holding that the trustee has power but by conferring power upon him."

Since the Society does not make a practice of accepting trust funds, and since the limitation on the receipt of deposits constitutes in any event a substantial barrier to the investment of the money, and in view of other changes since the will was drawn, I conclude that there has been such a change of circumstances from those apparently existing when the will was executed to warrant this court in giving the trustee the power to make other investments. Consequently, I direct the trustee to invest the proceeds of the sale subject to the provisions of *Paragraph* 4401 of the *Revised Code of Delaware* 1935, as amended, which designates proper trust investments.

Plaintiff next seeks to be instructed as to whether the designation of the beneficiary of the trust should be made by unanimous or majority decision of the faculty of Howard High School, or in some other way. Before proceeding, I must point out that the provisions of the will creating the "Edwina B. Kruse Scholarship fund" should be construed with due regard for the obvious motives which doubtless prompted its creation, viz., an understandable affection for the Howard High School, and a deep personal interest in the higher education of its students.

In accordance with the usual rules of testamentary

construction, it is pertinent to consider as a part of the surrounding circumstances the knowledge of the testratrix concerning the operation of the faculty of Howard High School when matters of policy were to be decided by them. The evidence before me indicates that the testatrix was principal of Howard High School for many years. The uniform practice during the tenure of the testratrix was for the full time faculty of Howard High School to meet and vote on matters of policy within their province. The decision of the majority of the full time faculty controlled. I conclude that it will comport with the intent of the testratrix as evidenced by the language of her will and the surrounding circumstances to construe the trust as requiring the beneficiary of the trust to be designated by a majority vote of the entire full time faculty of Howard High School.

The plaintiff next requests instruction as to whether the recipient of the scholarship must actually have been admitted to or be in attendance at a college or university. Since the will states that the scholarship is to be given to the boy or girl graduate of Howard High School "who shall desire to take a college course", I conclude that it is not mandatory that the recipient be actually admitted to or in attendance at a college or university at the time the scholarship is awarded. However, it is equally clear that although the scholarship may be awarded prior to admittance or attendance, the money must actually be used in furtherance of the recipient's college or university education.

The last two requests for instructions dealing with the length of time a student may be the recipient of the fund, and with the manner of payment thereof concern themselves with the administration of the trust and are, in my opinion, to be determined by the majority of the faculty of Howard High School as the entity entitled to designate the beneficiary of the fund. The trustee will be fully protected by making payments in the manner indicated by the majority of the faculty of Howard High School.

An order accordingly will be advised on notice.