JANE MOORE KEESLER AND HERMAN A. MOORE, JR. v. NORTH CARO-
LINA NATIONAL BANK, A CORPORATION; EMMIE McCONNELL MOORE
HOWERTON, D. LACY KEESLER, BETTY C. MOORE, ERIC M. MOORE,
A MINOR; HERMAN A. MOORE, III, A MINOR; LESLIE H. MOORE, A
MINOR; PHILIP CRAIG MOORE, A MINOR; DREW L. KEESLER, JR.,
A MINOR; JAMES Z. KEESLER, A MINOR; THE UNBORN ISSUE OF JANE
MOORE KEESLER, THE UNBORN ISSUE OF HERMAN A. MOORE, JR.,
AND ALL OTHER PERSONS WHOSE NAMES ARE UNKNOWN, IN BEING OR NOT
IN BEING, AND WHO HAVE OR MAY HAVE ANY INTEREST, PRESENT OR FUTURE,
IN THE ASSETS OF THE TRUST NOW BEING ADMINISTERED UNDER THE WILL OF
HERMAN A. MOORE.

(Filed 13 December, 1961.)

**1. Appeal and Error § 60—**

Where there is no exception by any of the parties to the adjudication
of a particular matter presented for decision, the appeal being directed
solely to other provisions of the judgment, that part of the judgment to
which there are no exceptions becomes the law of the case and is bind-
ing upon the parties.

**2. Wills § 59—**

Ordinarily, where the particular estate is terminated for any reason
not contemplated in the will the enjoyment of the remainder is accelerated
provided the remainder is vested and provided there is no express or im-
plied provision in the will to the contrary.

**3. Same—**

A legatee or devisee may disclaim or renounce his right under a will
irrespective of statutory authority, in which event the devise or bequest
never takes effect, but ordinarily such renunciation must be made before
the legatee or devisee has accepted any benefits under the devise or be-
quest and such renunciation may not be partial unless the gift is sepa-
rate and independent from the benefits not renounced.

**4. Same— Renunciation by life beneficiary of income from specified part
of trust held not to accelerate remainder.**

Testator set up a trust with provision that his wife be paid a stipulated
sum per year, with discretionary authority in the trustee to augment the
payments by an additional amount if deemed necessary for her com-
fortable support, with provision that any surplus should accumulate and
be added to the principal of the trust, with further provision that upon
the death of his wife a trust should be set up for each of his children,
with the income therefrom to be paid to each until the *corpus* of the
trust should be distributed in accordance with the terms of the instru-
ment. The widow executed a renunciation of her right to receive income
from specified stock of the *corpus* of the estate, but did not renounce
her right to receive income in the specified amount from the trust as a
whole, augmented by such additional amounts as the trustee might al-
low in its discretion. *Held:* The renunciation does not effect an accele-
ration of the remainder to the children, and they are not entitled to re-
ceive prior to the death of the widow income from the shares of stock
which were the subject of the renunciation, since any effect of the re-

nunciation would be to create a surplus and the will expressly directed the trustee to accumulate and hold any surplus subject to the terms of the instrument.

**5. Trusts § 5—**

Equity will modify a trust only when necessary to preserve the trust property and effectuate the primary purpose of the trust, and will not modify a trust merely to suit the convenience or wishes of the interested parties.

APPEAL by plaintiffs from *Sharp, S.J.*, June 19, 1961 Special Term of MECKLENBURG.

Herman A. Moore, a resident of Mecklenburg County, died testate on 12 January 1948. He was survived by his wife, Emmie McConnell Moore, a son, Herman A. Moore, Jr., and a daughter, Jane Moore. Their approximate ages at the time of the death of Herman A. Moore were 41, 18 and 12 years respectively.

The portions of the last will and testament of Herman A. Moore which are of material concern on this appeal are as follows:

"*ITEM IV.* I give, devise and bequeath all the rest, residue and remainder of my property . . . unto the AMERICAN TRUST COMPANY. . . . IN TRUST, however, for the uses and purposes as follows:

— A —

"If my wife, EMMIE McCONNELL MOORE, shall survive me, my Trustee is directed to pay to her in equal monthly installments the sum of Twelve Thousand Dollars ($12,000.00) per year for and during the period of her natural life. Such payments shall be made out of income therefor, and any deficiency shall be paid out of the principal of my trust estate.

"The Trustee in its discretion may add to and augment the payments of One Thousand Dollars ($1,000.00) per month, provided for above, as in its discretion it shall deem such action necessary to provide for the comfortable support and maintenance of my wife. . . .

"If . . . there shall remain any surplus net income from my trust estate, such surplus net income shall accumulate in the hands of my Trustee and shall be invested and reinvested and added to the principal of my trust estate and shall thenceforth be subject to the terms and provisions hereinafter contained controlling the distribution of the principal of this trust.

— B —

"On the death of my wife, EMMIE McCONNELL MOORE, I di-

rect my Trustee to set aside a special trust of One Hundred Thousand Dollars ($100,000.00) each for each child then living or if any child shall have died leaving issue, a trust in the same amount shall be set up for the issue of such child as a group.

"(1) Any trust so set up for a son shall be distributed as follows: Said Trustee shall pay the entire net income of such trust to such son commencing at age 21 and until he has arrived at the age of 35 years. . . . .

"(2) If such son shall be 35 years of age at the time of the death of my wife, said Trustee shall make immediate distribution to such son of the amount which would otherwise have been set up in trust for him, or if such son shall arrive at the age of 35 years after the death of my wife, the corpus of said trust shall be paid over to him in full at age 35.

— C —

"Any trust so set up for a daughter shall be distributed as follows:

"Said Trustee shall administer the same similarly in all respects as provided in the trust for each son in the paragraph next preceding, except as follows:

"From age 21 through 35 each such daughter shall receive all the net income and thereafter for life all net income or Three Hundred ($300.00) Dollars per month, whichever is the greater, and to accomplish this purpose, the principal may be invaded to the extent necessary.

"*ITEM V.* The residuary of said corpus of the trust after the creation of the trusts, provided for above, shall be equally divided between the trust for the children thus set up, and added thereto, . . .

"*ITEM VII.* The trust established, if any, for the issue of any deceased child shall be distributed as follows: During minority of said issue the Trustee is directed to use the income and so much of the principal as in its discretion it may deem necessary to provide for the support, maintenance and education of such issue without allocation or division of the corpus. When the youngest living issue shall arrive at age twenty-one (21), the Trustee shall make division, share and share alike, and pay and deliver same to each issue and said trust for said issue shall thereupon cease and determine. Issue arriving at age twenty-one shall thereafter receive an aliquot share of the net income of said trust until the youngest living issue shall arrive at age twenty-one. The surviving issue shall receive the share of any deceased issue.

"*ITEM VIII.* I hereby vest in each of my children who shall survive me a power of appointment covering the interest of such child

under this trust, said power of appointment to be limited as follows: Such child may bequeath or devise said interest to members of the following class: the spouse of such child or the issue of such child or the spouse of said issue."

"*ITEM X.* Unless sooner terminated in accordance with the foregoing provisions, each of the trusts created by this Will shall in any event terminate and be distributed, discharged of all trust restrictions, upon the expiration of a period of twenty-one years from and after the death of the last survivor of me, my said wife, my children and such of the issue of my children, if any, as shall be living at the time of my death, . . ."

The American Trust Company is now the North Carolina National Bank. The widow has remarried and is now Emmie McConnell Moore Howerton; Herman A. Moore, Jr. is married; and the daughter is married, is now Jane Moore Keesler. Their ages in February 1960 were 53, 30 and 24 years respectively. Herman, Jr., and Jane are the plaintiffs in this action.

At the time of the death of Herman A. Moore he had no grandchildren. Herman, Jr., presently has four children and Jane has two. Their children are parties defendant herein and are represented by *guardian ad litem.* A *guardian ad litem* has been appointed for unborn children and unknown persons who may have or claim an interest in the subject of this action. The widow and the Trustee are parties defendant.

At testator's death the approximate value of his estate was $200,-000.00. The present value of the principal of the trust is approximately $3,500,000.00. From the establishment of the trust until April 30, 1959, the average net annual income from the trust and the average annual distribution from income has been as follows: Net income, $97,499.90; to widow, $32,538.72; taxes, $38,987.23; to trust principal, $25,973.95. The figures for the fiscal year April 1960 to April 1961 are: Net income, $138,579.53; to widow, $37,468.99; taxes, $57,093.44; to trust principal, $45,111.74.

On 9 February 1960 the widow, Emmie McConnell Moore Howerton, executed and delivered to the Trustee a written instrument which is, in part, as follows:

". . . I hereby renounce, abandon, release, waive and quitclaim unto American Commercial Bank as Trustee under said (Herman A. Moore's) Will all right, title and interest, whether in income, principal or otherwise, which I may now have or might have hereafter under said Will in 16,660 shares of common stock of Auto Finance Company held by said Trustee as part of the principal of the trust created by Item IV of said Will, upon the condition that such renunciation, aban-

donment, release, waiver and quitclaim shall operate, and shall be construed, solely as a renunciation, abandonment, release, waiver and quitclaim of my interest in the aforesaid 16,660 shares . . . including all future income therefrom, and shall be without prejudice to, but expressly reserving, all of my other rights under said trust and in all other properties included therein and in the income and principal thereof, particularly my right to receive from said trust a minimum of $12,-000 per year, augmented by such additional amount as the Trustee in its discretion shall deem necessary for my comfortable support and maintenance . . . payable first from the income of said trust and thereafter, to the extent, if any, that the income in any year shall not be sufficient for said purpose, then out of the principal thereof."

The stock referred to in the instrument has a value of approximately $22.00 per share. The widow had not renounced or attempted to renounce any benefits under the will prior to 9 February 1960, but had accepted all benefits provided her thereunder.

Plaintiffs, son and daughter of testator, instituted this action and alleged that the foregoing release and renunciation by the widow of her beneficial interest in the shares of stock accelerated their beneficial remainder interests in such shares. They pray that the Trustee be ordered and directed to divide the shares equally between the separate trusts for the respective benefit of each of the plaintiffs and hold the shares and administer the trusts "as if defendant Howerton were deceased," pursuant to the terms of the will.

The parties waived jury trial. The court found facts, made conclusions of law and entered judgment decreeing that the document signed by the widow on 9 February 1960 "did not operate to accelerate the remainder interests of the plaintiffs . . . in and to the shares of stock . . . nor to terminate the contingent remainder interests of the grandchildren," that the Trustee hold the shares, subject to its right to sell the shares and reinvest the proceeds, and that the income be accumulated "to await the death of the widow," at which time such principal and accumulated income shall be distributed as directed by the will, and that none of the income or principal of such shares be paid to Emmie McConnell Moore Howerton during her life.

Plaintiffs appealed.

*Lassiter, Moore and Van Allen, and Robert Lassiter, Jr. for plaintiffs, appellants.*

*Pierce, Wardlow, Knox and Caudle, and Lloyd C. Caudle for defendant North Carolina National Bank, appellee.*

*Cansler & Lockhart and B. Irvin Boyle for defendant Mrs. Emmie McConnell Moore Howerton, appellee.*

*Robert L. Hines, Guardian Ad Litem, appellee.*

MOORE, J.   The trial court adjudged that no portion, principal or income, of the 16,660 shares of stock of Auto Finance Company, referred to in the instrument executed by Emmie McConnell Moore Howerton on 9 February 1960, shall be paid to her by the trustee during her life time. Thus it is adjudged that the instrument is binding upon Mrs. Howerton. G.S. 36-41. No exception was taken to this ruling by any of the parties to the action. Therefore, this is the settled law of the case as to her.

On this appeal the question for determination is: What effect, if any, does the instrument have upon the rights and duties of the other parties to the action with respect to the trust estate? Plaintiffs maintain that, with respect to the portion of the trust estate represented by the 16,660 shares of stock of Auto Finance Company, the activation of the trusts provided in the will of Herman A. Moore for the benefit of plaintiffs is accelerated by reason of the document executed by the widow, and that these trusts should be set up forthwith and payment of income to plaintiffs from the shares of stock should proceed.

"The problem of acceleration of remainder interests arises when for some reason the precedent estate given by will . . . terminates prematurely or in a manner not contemplated by the will in providing for the remainder over. The person to whom the life estate is provided may die before the testator, or the gift of the life estate may be void, or the life tenant may refuse or renounce the gift of the life estate, whereas the will provides only that the remaindermen are to take upon, or at, or after, the death of the life tenant. Under the doctrine of acceleration, the general rule is that vested remainders take effect immediately upon the death of the testator where the life estate has failed prior to testator's death, or immediately after the determination of the life estate subsequent to the death of the testator, whether the failure or determination of the life estate is due to death, revocation, incapacity of the devisee to take, or any other circumstance. This rule applies, of course, in the absence of a controlling equity or an express or implied provision in the will to the contrary. . . . By renunciation or repudiation of a life estate is meant such an unequivocal act by the life tenant as would destroy his claim as a life tenant so that he could not thereafter assert it, and would accelerate and mature the remainder. . . . The doctrine of acceleration applies to personal property as well as to real property." 33 Am. Jur., Life Estates, Remainders, etc., s. 154, pp. 620-622.

In this jurisdiction the doctrine of acceleration of estates in remainder has been applied in instances where a widow, who has been given a life estate by the will of her husband, dissents from the will and elects to take her dower or statutory share instead. *Trust Co. v.*

*McEwen,* 241 N.C. 166, 84 S.E. 2d 642; *Blackwood v. Blackwood,* 237 N.C. 726, 76 S.E. 2d 122; *Trust Co. v. Johnson,* 236 N.C. 594, 73 S.E. 2d 468; *Bank v. Easterby,* 236 N.C. 599, 73 S.E. 2d 541; *Neill v. Bach,* 231 N.C. 391, 57 S.E. 2d 385; *Cheshire v. Drewry,* 213 N.C. 450, 197 S.E. 1; *Young v. Harris,* 176 N.C. 631, 97 S.E. 609; *Baptist University v. Borden,* 132 N.C. 476, 44 S.E. 47;*Wilson v. Stafford,* 60 N.C. 646. In final analysis, the question as to whether or not remainders will accelerate, when the life estate devised to the widow falls in by reason of her dissent from the will of her husband, is to be determined from the intent of the testator gathered from the will as a whole. "The doctrine of acceleration, by which the 'enjoyment of an expectant interest is hastened,' rests upon the theory that such enjoyment having been postponed for the benefit of a preceding vested estate or interest, on the . . . determination of such preceding estate before it would regularly expire, the ultimate takers should come into the present enjoyment of their property. Unless a contrary intent is disclosed by the will, the position is fully recognized, where a widow has dissented. . . ." *Young v. Harris, supra.* In such case the dissent of the widow, so far as the remaindermen are concerned, is equivalent to her death. *Trust Co. v. McEwen, supra.* In making a will a husband is presumed to have knowledge of and to have taken into consideration the statutory right of his widow to dissent from the will. G.S. 30-1. A remainder will not be accelerated if it is impossible to identify the remaindermen or if there is an intention on the part of the testator to postpone the taking effect of the remainder. *Trust Co. v. Johnson, supra.* If it appears in the will that the maker of the testament intended that the life of the person who was intended to receive the particular estate should terminate before the remainder interest should become possessory, the court will not accelerate the nonpossessory interest.

In *Trust Co. v. McEwen, supra,* testator devised and bequeathed property to a trustee for the benefit of his wife for life, with provision that upon her death the estate should be equally divided among his children, and with further provision that, if any child should be then deceased, his or her share should go to his or her children. The widow dissented from the will. It was held that the interests of testator's children accelerated and they were entitled to immediate possession. It was there stated, "A vested remainder may be accelerated, although future contingent interests will thereby be cut off" (quoting from 31 C.J.S., Estates, s. 82, p. 96).

In the instant case, however, the widow did not dissent from the will of Herman A. Moore. She elected to take under the will. It is suggested that the instrument she executed and delivered to the trustee in 1960 amounts to a partial renunciation of the testamentary

gift. Under a different factual situation this Court indicated that a partial renunciation is not recognized in this State. *Bailey v. McLain,* 215 N.C. 150, 155, 1 S.E. 2d 372. This rule probably would not be applied in all situations. "Where two or more separate and independent gifts are made by a will to a beneficiary, he is, as a general rule, entitled to accept one or more and disclaim others, unless a contrary intention on the part of the testator appears from other provisions of the will." 91 A.L.R., Anno. — Rejecting part of testamentary gift, s. II, p. 608. However, the gift to Mrs. Howerton with respect to the indicated shares of stock was not separate from nor independent of the remainder of the trust corpus.

Furthermore, the act of defendant Howerton in releasing her interest in the shares of stock does not constitute a renunciation as that term is defined and limited in relation to estates created by will. A legatee under a will is not bound to accept a legacy or devise therein provided, but may disclaim or renounce his right under the will, even where the legacy or devise is beneficial to him, provided he has not already accepted it. The right to renounce a legacy is a natural one and needs no statutory authorization. A title by devise requires the assent of the devisee before it can take effect. When a devisee accepts a devise, his title relates back to the death of the testator, but when there is a renunciation the devise never takes effect and title never vests in the devisee. *Perkins v. Isley,* 224 N.C. 793, 32 S.E. 2d 588. Mrs. Howerton accepted the legacy provided for her in the will of Herman A. Moore and received the benefits for 12 years before executing the instrument dated 9 February 1960.

Mrs. Howerton's estate is not terminated. For all practical purposes she has retained all the benefits conferred upon her by the will. In the instrument executed by her she specifically reserves "all . . . other rights under the trust and in all other properties included therein and in the income and principal thereof, particularly . . . right to receive from said trust a minimum of $12,000 per year, augmented by such additional amount as the trustee in its discretion shall deem necessary for (her) comfortable support . . ." These benefits are all that the will provides for her. She has merely released the trustee from the duty of paying any of these benefits from the principal and income of the specified shares of stock, and relinquished whatever rights she had to require that the payment of benefits be made from this stock.

It is our opinion, from a careful consideration of the terms of the will, that the testator did not intend a piecemeal acceleration of the trusts provided for his son and daughter, but made provisions to the contrary. He anticipated that, after payment of the benefits to his wife, there might be surplus net income from the trust estate. He pro-

vided, in such event, that "such surplus net income shall accumulate in the hands of . . . trustee and shall be . . . added to the principal of . . . trust estate and shall thenceforth be subject to the terms and provisions hereinafter contained controlling the distribution of the principal of this trust." If the release by the widow has any effect, it is to create a surplus. She merely recognizes the existence of a surplus. The trustee is under the duty to accumulate and hold the surplus subject to the terms of the will. Furthermore, the testator was fully aware of the ages of his wife and children and that his wife might live for many years. He had in mind that his wife might be living when his son and daughter attained age 35. He provided: "If such son shall be 35 years of age at the time of the death of my wife, said Trustee shall make immediate distribution to such son . . ." There is a somewhat similar provision referring to the arrival of the daughter at age 35.

To allow the contention of plaintiffs would be to rewrite, in part, the will of the testator. In altering a trust, the court exercises its equity jurisdiction when, and only when, it is necessary to preserve the trust and effectuate its primary purpose. *Carter v. Kempton*, 233 N.C. 1, 9, 62 S.E. 2d 713. It is contrary to the holdings and inclination of this Court to make a will for a decedent so as to meet the convenience and wishes of interested parties. *In re Westfeldt*, 188 N.C. 702, 125 S.E. 531; *McDaniel v. King*, 90 N.C. 597.

The judgment below is
Affirmed.