BANK OF DELAWARE, a banking corporation of the State of Delaware, Trustee U/A of Joshua A. Ellegood, Plaintiff,

*vs.*

CLAIRE ELLEGOOD SMITH, ALAN A. SMITH, a. k. a., ALAN DASHIELL, and WINDER D. SMITH, Defendants.

*New Castle, June 15, 1965.*

*Henry N. Herndon, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

*Richard L. McMahon* of Berl, Potter & Anderson, Wilmington, for defendants.

*Arthur J. Sullivan* of Morris, James, Hitchens & Williams, Wilmington, guardian ad litem.

SEITZ, Chancellor: The issue raised by this request for instructions is whether the income beneficiary who is not the settlor of an *inter vivos* trust may, after having accepted the income therefrom for years, renounce or disclaim a portion of such income so as to make it available for the succeeding interest.

The testator died April 2, 1928, and his widow died July 12, 1946. One child, Claire Ellegood Smith, a defendant ("daughter"), was born of the marriage on December 27, 1886. She married Alexander H. Smith in 1920 and he died in 1933. She had one natural child, Winder ("Winder") who was born in 1924. He is married and has five children. She had a foster child Alan ("Alan") who was born in 1922 and has never married.

During his lifetime the testator created an *inter vivos* trust dated March 24, 1920 with the income payable for life to his daughter, and from which she receives about $2,000.00 a year income.

The testator created a second *inter vivos* trust, which is the one in issue, dated July 15, 1925. It provided that, except for a small sum, all the income was payable to the testator for his lifetime. Thereafter, substantially all the income was payable to his daughter for her lifetime. The trust assets were then to be divided into two equal trusts, the income from one to go to Alan and the income from the other to Winder. At their deaths the trust assets are to be distributed to their children per stirpes, or in default, to the testator's next of kin. It is provided that in the event of the birth or adoption of any other children by the daughter, such children should share as though actually named along with Alan and Winder. The instrument also recites:

"PROVIDED FURTHER that neither the principal nor the income payable to any person under this Trust other than to the said Joshua A. Ellegood for his own benefit, shall be liable to execution, attachment or other legal process, or be capable of assignment by way of anticipation, or be in any other way subject to the debts, control or liabilities of the beneficiaries."

The agreement provides that the testator may distribute up to one-half of the corpus to any income beneficiary, "if it deems it to the advantage of any person or persons." The principal of this trust is about $1,450,000 and produces about $41,000 a year income. The daughter has been receiving most of the income since her father's death and all of the income since 1935.

Under his will of March 2, 1928, the testator created a testamentary trust from which the daughter receives an annual income of about $7,000.

Thus, at this time the daughter is receiving about $50,000 a year income from the three trusts and is paying between $15,000 and $20,000 a year in taxes. Both Winder and Alan have modest earned incomes.

It is represented by the income beneficiary that because of her advanced years she lives modestly and no longer needs all the income she receives from the trusts. She states that she will not adopt any more children and that she has no intention of having more children. Since she is 79 years of age the latter statement is presumably made to negate the effect of the presumption concerning indefinite feminine fertility which is thought to be the Delaware law. She states that she is interested in providing more income for her children and that she can help them and save taxes at the same time by the method she has adopted.

The daughter executed an instrument dated February 11, 1965 in which she purports to "renounce and disclaim sixty per cent of all my life estate in the said trust estate and sixty per cent of all right, title and interest of whatever nature therein given to me by the provisions of the said trust instrument" [July 25, 1925]. She states therein that it is her intention in creating the instrument to terminate her life

estate in the said trust to the extent of sixty per cent thereof "as effectively as would * * * [her] death". She further states:

> "PROVIDED, HOWEVER, that if the Court of Chancery of the State of Delaware shall at any time for any reason rule this partial renunciation in any way invalid or shall rule that my said life estate to the extent of sixty per cent thereof has not been terminated hereby for all purposes as effectively as would my death, then this partial renunciation shall become void ab initio."

By identical letters Alan and Winder have requested the trustee to forward each 30% of the disclaimed trust income in accordance with the terms of the trust.

The court appointed a guardian ad litem to represent the interests of unborn or future adopted children of the daughter and any issue of such children and any unborn issue of the present children of the daughter. The plaintiff and the guardian, on the one hand, and the other defendants (the daughter, Alan and Winder) on the other, have moved for summary judgment and this is the decision thereon.

Preliminarily, I shall pass over the possibility that this action might not be appropriate for decision on the merits because of the provision vitiating the effect of the disclaimer in the event it is ruled that it does not have the full effect intended. It is also not disputed that the daughter fully accepted the gift of the trust income.

I emphasize at the outset, as do defendants, that we are concerned with a problem of an attempted disclaimer or renunciation and not with a purported transfer. Further, we are concerned with a purported partial disclaimer or renunciation after acceptance. Does the instrument executed by the daughter have the effect intended?

It seems clear that a beneficiary of a single, aggregate gift lacks the power, absent evidence of a testamentary intent to the contrary, to accept part and reject part thereof. See generally 91 A.L.R. 607; 1A *Bogert, Trusts & Trustees,* § 173. And this is true of a gift in trust. In re *Hotchkiss, 32 Ch.D.* 468. Nor is there any reason here to distinguish between interests created by *inter vivos* instruments and wills.

It has been said by way of dictum that an income beneficiary may not, after having accepted a gift thereof, disclaim or renounce it. See *Wilmington Trust Co. v. Carpenter,* 31 *Del.Ch.* 411, 75 *A.2d* 815 and authorities there cited. However, it is recognized that the matter turns upon the donor's expressed intent. In the Carpenter case the settlor was in a position to express her intent with respect to her income since she was one and the same person. This factor is absent here, and there is no language in the will to suggest that the income beneficiary was given the right to disclaim after having accepted the gift.

Since a donee cannot accept part and disclaim part of a unitary gift at its inception, it would seem to follow, *a fortiori,* that she cannot reject part of the gift of income from a single such source after having accepted it for many years. Compare *Keesler v. North Carolina National Bank,* 256 *N.C.* 12, 122 *S.E.2d* 807. The general rule is based on the indivisibility of the testator's intent and the consequent fact that to permit a partial acceptance would be tantamount to a rewriting of the will.

Defendants argue that this court in *Shepard v. Burr,* 10 *Del.Ch.* 182, 87 *A.* 1020, indicated that a life tenant of a trust may, after having accepted its benefits, "terminate" his interest. First off, it is clear that such a party can terminate his interest under a will in several ways, depending upon the language of the particular instrument. Thus, more precise analysis is required to dispose of each particular case. Passing over other factors, the Burr case is clearly distinguishable because it involved a release of the life tenant's interest rather than a disclaimer or renunciation. A release suggests a disposition of an acquired interest by the recipient and to that extent is the antithesis of a disclaimer. Compare 6 *Page on Wills* (*Bowe-Parker Rev.*), § 49.1. There was no spendthrift problem there involved.

I therefore conclude that the daughter, as an income beneficiary, may not under these circumstances effectively renounce or disclaim a portion of the trust income. I need go no further because I assume that on the basis of this conclusion the saving provision of her disclaimer becomes operative to continue the existing status of the trust.

I am personally sympathetic with the desire of the daughter and the needs of her children. However, I do not believe the court should cast asunder applicable general principles of law and enter a chartless sea of individualized justice, particularly where the testator's intent is reasonably clear. I am even more certain that the formulation of rules of law should not be distorted or unreasonably applied because of tax considerations.

The motions of the trustee and guardian for summary judgment will be granted and the defendants' similar motion will be denied.

Present order on notice.