**BANK OF DELAWARE, a banking corporation of the State of Delaware, Trustee under an Agreement with William P. Bancroft, Plaintiff,**

**v.**

**Sarah Bancroft CLARK et al., Defendants.**

Court of Chancery of Delaware.

July 9, 1968.

Henry N. Herndon, Jr., Wilmington, for plaintiff.

Charles K. Keil, Wilmington, for minor defendants and unborn issue.

Richard L. McMahon, Wilmington, for adult defendants.

Rodney M. Layton, Wilmington, for Wilmington Medical Center, Inc.

SHORT, Vice Chancellor:

On August 17, 1899, William P. Bancroft entered into an inter vivos trust agreement with plaintiff's predecessor, Security Trust and Safe Deposit Company. The trust was funded by Bancroft's deposit with the trustee of the sum of $100,000. The agreement provided that the principal was to be invested in mortgages on real estate situated within fifty miles of the City of Wilmington. The net income of the trust was payable to Bancroft for life, then to his wife for life and upon Mrs. Bancroft's death to their children and the issue of deceased children for a period ending twenty-one years after the death of the last child to die, at which time the principal was distributable per stirpes to the settlor's then living issue. In default of such issue the principal was to be paid to the Wilmington Medical Center, Inc.

Bancroft and his wife had two children, Sarah B. Clark and Lucy B. Gillett who have been receiving the income of the trust since their mother's death in 1929. On September 1, 1966 Sarah B. Clark and Lucy B. Gillett executed renunciations of their life interests, stating their intention to terminate their interests in the trust as effectively as would their death.

On January 12, 1967 the trustee filed its complaint seeking instructions with respect to the validity and effect of the renunciations and requesting permission to sell the trust assets and invest the proceeds in accordance with 12 Del.C. § 3302. The adult defendants and the guardian ad litem appointed to represent the minor and unborn issue of the settlor have filed cross motions for summary judgment. The issues raised are (1) whether the renunciations are valid and (2) if valid, whether the succeeding estates and the commencement of the twenty-one year period accelerate. All

parties agree that it would be in the interest of the trust estate and the beneficiaries thereof to permit the trustee to deviate from the investment provisions of the trust agreement. This is the decision on the issues raised by the motions and the trustee's request to deviate from the restriction on *investments*.

■ In spite of broad general statements of text writers and certain observations of this court to the contrary, I am persuaded that absent controlling language in an instrument creating a trust a life income beneficiary, although he has accepted the income for a period of years, may nevertheless terminate his interest by a formal relinquishment thereof except where the rights of others would be thereby prejudiced. Illustrative of the contrary is the statement in Bogert, Trusts and Trustees (2nd Ed.) § 170: "At common law it is generally held that acceptance or disclaim is final and that a beneficiary may not change his attitude after having definitely announced his position regarding the benefits of the trust." The author, however, continues: "But, as in the case of acceptance or refusal of trusteeships, there is some tendency to permit the withdrawal of acceptance or renunciation where there has been no action by others in reliance on the original position of the beneficiary which would lay a basis for estoppel."

In Wilmington Trust Co. v. Carpenter, 31 Del.Ch. 411, 75 A.2d 815, the Chancellor said: "In general, the right of a life beneficiary of a trust created by another person to refuse to accept its benefits has been recognized in this State * * * The textbooks make the broad general statement, however, that a beneficiary cannot renounce the gift after having accepted it. * * * This would seem to depend upon the intent of the donor of the fund and is usually determined by the provisions of the instrument creating the trust."

In Bank of Delaware v. Smith, 42 Del. Ch. 335, 211 A.2d 591, the last sentence of the quoted language from *Carpenter* was construed as requiring permissive language in the trust instrument. I observe, however, that proper construction might well be otherwise, that is, requiring preventive language as in the analogous case where acceleration of interests upon the premature determination of a life right to income is concerned.

Since the guardian ad litem relies heavily upon *Smith,* that case requires some detailed consideration. The trust there involved contained spendthrift provisions. The life income beneficiary, after accepting the income for a period of years, attempted to renounce part of the income. The Chancellor held the attempted renunciation to be ineffective. On appeal, the Supreme Court in Smith v. Bank of Delaware, Del.Ch., 219 A.2d 576, affirmed the judgment of this court on the ground that the case was governed by the rules applicable to spendthrift trusts. In commenting upon the opinion of the Chancellor the Supreme Court said: "The Court below held the renunciation invalid on the unqualified ground that, since a beneficiary cannot accept part and disclaim part of a unitary gift at its inception, she may not thereafter reject part of the gift. * * * If the Court below intended to say that this rule applied to trusts which contain no spendthrift clause, we would have some doubts about its conclusion." Though the Supreme Court found it unnecessary to decide the point on which this court's judgment was based, it nevertheless expressed its doubt that a beneficiary of a trust containing no spendthrift provisions could not after accepting the income reject a part thereof. Where, as here, there are no spendthrift provisions in the trust instrument and the renunciation is of the entire income there should be even less doubt that the renunciation is effective.

The conclusion which I have here reached is not without supporting authority. In Shepard v. Burr, 10 Del.Ch. 182, 87 A. 1020, a life beneficiary of a trust, after having accepted its benefits, "released" to the trustees her interest in the trust. The

validity of the release with the resulting extinguishment of the life interest was recognized by the court which said: "The acceleration of the time for a distribution of the estate, caused by the release of the widow, cannot affect the rights of the two daughters. * * * She can do as she pleases with her own, and can by her act of releasing hasten the division of the estate, provided such earlier distribution does not affect the rights of others."

It is contended that the Shepard case is distinguishable because the instrument of relinquishment there was in the form of a release whereas that here involved is in the form of a renunciation. This distinction was recognized in Bank of Delaware v. Smith, supra. But the doubt expressed by the Supreme Court also bears upon the asserted distinction for the instrument involved in *Smith* was also, in form, a renunciation, and, in any event, I am not persuaded that the right of a life income beneficiary to relinquish the benefits provided by the trust instrument is dependent upon the form in which the relinquishment is cast. If it unequivocally indicates an intent to terminate the life interest its effect is the same whatever its form.

In Compton v. Rixey's Ex'rs, 124 Va. 548, 98 S.E. 651, 5 A.L.R. 465 a life income beneficiary renounced her interest after receiving the income for seven years. The renunciation was recognized as effective to terminate the life interest.

In 28 Halsbury's Laws of England 601 it is said: "As a rule * * * if the donee is sui juris, and the will itself does not provide otherwise, a gift once unequivocally disclaimed can not be afterwards claimed, nor can a gift once unequivocally accepted be afterwards repudiated to the prejudice of others." This language would seem to indicate that where no prejudice results to others from the repudiation of a gift after acceptance the repudiation would be recognized by the English courts as effective.

The rule stated by the text writers may well be applicable in the case of various types of gifts, whether testamentary or inter vivos, in trust or otherwise. But its application here is inappropriate. And this is particularly so in light of the well established rule that the beneficiary of a trust fund may, in the absence of restrictive provisions in the trust instrument, sell, assign or give it away. Lewes Trust Co. v. Smith, 28 Del.Ch. 64, 37 A.2d 385.

Since I am satisfied, as will hereafter appear, that no succeeding interest under the trust will be prejudiced by recognition of the renunciations as valid, the trustee is instructed that the renunciations of Sarah B. Clark and Lucy B. Gillett are valid and have the effect of terminating their rights to life income under the trust agreement involved.

It has long been settled in this State that where possession and enjoyment of a trust fund by other beneficiaries is postponed solely for the benefit of a life taker of the income, upon the premature termination of the prior life right to the income the rights of the succeeding beneficiaries will be accelerated unless contrary to the intent of the settlor. Scotten v. Moore, 5 Boyce 545, 93 A. 373; Equitable Trust Co. v. Proctor, 27 Del.Ch. 151, 32 A.2d 422; Wilmington Trust Co. v. Carpenter, supra. In such case it is the presumed intent of the settlor that the renunciation of the life right is the equivalent of the death of the life beneficiary. Scotten v. Moore, supra. The same rule applies to succeeding life rights to the income. Here the settlor provided that upon his wife's death the income was to be paid to their children and the issue of deceased children for the period stated. The postponement of enjoyment of the income by the children's issue was obviously for the sole benefit of the children.

Though the guardian ad litem contends that the right of the issue of Mrs. Clark and Mrs. Gillett to the income should not

be accelerated he points to no language in the trust instrument which can be taken as indicating an intent contrary to that which is presumed. Neither does he argue that acceleration will in any way prejudice the rights of the children's issue, the contrary being apparent. In fact, the only basis for his contention is an attempt to distinguish the cited cases on the ground that the renunciations there involved were made prior to the acceptance of any benefits whereas here the life income beneficiaries accepted the income for many years. As bearing on the settlor's intent the attempted distinction is not persuasive. Moreover, to deny acceleration would require the income to be accumulated which would clearly be contrary to the settlor's intent.

The trustee is instructed that the extinguishment of the rights of Sarah B. Clark and Lucy B. Gillett to income of the trust by virtue of their renunciations has the effect of accelerating the right of their issue to the income.

■ The adult defendants contend that the renunciations also have the effect of accelerating the commencement of the twenty-one year period at the end of which the trust is to terminate. The guardian ad litem argues that the twenty-one year period is to be measured from the date of death of the survivor of Mrs. Clark and Mrs. Gillett and that the renunciations should not accelerate the commencement of the twenty-one year period. While I have found nothing in the trust instrument or in the circumstances to indicate a contrary intent to the acceleration of the right of the children's issue to income, I am satisfied that an acceleration of the commencement of the twenty-one year period would be contrary to the intent of the settlor.

The adult beneficiaries concede that the settlor has made "an obvious attempt * * to keep the trust in force for as long as the law permits under the rule against perpetuities." But they contend that determination of the question of acceleration in this regard is dependent upon the *expressed* intent of the settlor and that since there is nothing in the trust instrument to suggest "a hiatus between the ending of the children's life estate and the beginning of the twenty-one year period" the trust instrument clearly calls for the commencement of the period upon the termination of the children's life estate, that is, on the date of their renunciations. But I can not agree with this contention. The very fact that the settlor made the trust terminable twenty-one years after the death of the last of his children to die clearly indicates his intent that the trust should continue for the longest period permitted by the rule against perpetuities. In effect, this was his *expressed* intent and in such situation the use of the word "death" in the trust instrument must necessarily be taken as intended to mean death in fact and not simply termination of the life income beneficiaries' estate. The intent was obviously to provide for distribution of the corpus of the trust to those of the settlor's issue who were living at the end of the longest period of time permitted by the law and not those who were living at some prior time.

In Scotten v. Moore, supra, the Supreme Court said: "The principle of acceleration in the vesting of a remainder by the premature termination of the preceding life estate rests upon the testamentary intention, and will be applied only when it promotes that intention, and never when it defeats it." Since the intent here would be defeated by acceleration of the commencement of the twenty-one year period provided in the trust instrument the principle is not to be applied. Cases such as DuPont v. Equitable Security Trust Co., 35 Del.Ch. 514, 122 A.2d 429 and Wilmington Trust Co. v. Jobling, Del.Ch., C.A. No. 2052, New Castle County, are not in point as the trust instrument in neither of them contained language comparable to that here appearing.

The trustee is instructed that the renunciations of Mrs. Clark and Mrs. Gillett do not have the effect of accelerating the

commencement of the twenty-one year period provided in the trust instrument.

The adult beneficiaries and the guardian ad litem join the trustee in praying for an order permitting deviation from the investment provisions of the trust agreement. That instrument provides that the trust principal shall be invested "in mortgages on real estate, situated in the City of Wilmington, Delaware, or within 50 miles of said City, * * * The said Company shall keep the said principal fund as closely invested as may be practicable, and shall allow interest at the rate of four per certum per annum on any part or parts of said fund whilst the same shall remain uninvested * * *"

In support of its prayer the trustee argues that the language of the trust instrument expressly recognizes that investments in mortgages may not always be "practicable" and that therefore the settlor himself impliedly authorized other forms of investment. It is further argued that while there is a division of authority as to the circumstances under which a court of equity can permit a deviation from investment provisions, the so-called substitution of judgment approach should be applied here. Since I am satisfied that that theory has been followed in Delaware and is particularly applicable to circumstances such as the present, I find it unnecessary to consider cases from other jurisdictions.

The power of this court to permit deviation from investment provisions of a trust is expressly recognized by statute. 12 Del.C. § 3306. But "this is an authority to be exercised by the Court of Chancery with extreme caution, and only when clearly required for the benefit of all interested and for the preservation of the corpus of the trust fund." In re Bellah, Trustee, 8 Del.Ch. 59, 67 A. 973, in which deviation was authorized.

In Woodlen v. Brodnax, 30 Del.Ch. 227, 57 A.2d 752, the trustee requested permission to sell trust realty and to deviate from investment provisions. The latter required trust funds to be deposited in the Wilmington Savings Fund Society which did not make a practice of accepting such funds and limited deposits to $250 per month. In holding that the question presented was one of impracticability rather than impossibility then Vice Chancellor Seitz cited 2 Scott on Trusts, § 167: "It not infrequently happens that it is not impossible to comply with a term of the trust and that the term of the trust is not illegal or against public policy, but that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat the purposes of the trust * * * Where it is impossible to interpret the trust instrument as permitting the trustee to do the act desired, the court may nevertheless permit the act under proper circumstances. In such a case the court exercises its jurisdiction to control the administration of the trust, not by holding that the trustee has power but by conferring power upon him."

The Vice Chancellor then said: "Since the Society does not make a practice of accepting trust funds, and since the limitation on the receipt of deposits constitutes in any event a substantial barrier to the investment of money, and in view of other changes since the will was drawn, I conclude that there has been such a change of circumstances from those apparently existing when the will was executed to warrant this court in giving the trustee the power to make other investments. Consequently, I direct the trustee to invest the proceeds of the sale subject to the provisions of Paragraph 4401 of the Revised Code of Delaware 1935, as amended, which designates proper trust investments." The Vice Chancellor thus recognized that a change in circumstances not anticipated by the creator of the trust would warrant a grant of power to the trustee to deviate from impractical investment provisions. The substitution of judgment theory was applied.

In the somewhat analogous situations of applications by trustees to sell trust proper-

ty under the provisions of 12 Del.C. § 3533 and by guardians to make inter vivos distributions of their ward's estates this court has adopted a like approach. See, In re McComb's Will, 25 Del.Ch. 118, 14 A.2d 421; In re DuPont, 41 Del.Ch. 300, 194 A. 2d 309.

That a decided change in circumstances has taken place since the creation of the trust here involved is evident. In terms of purchasing power the value of the dollar has sharply declined with the result that the real value of the income has been reduced and the corpus impaired. This is a fact of which the court might well take judicial notice. In any event, it is supported by expert evaluations appearing in the record. Since prospects of improvement in the economic picture do not appear to be bright, continued adherence to the restrictive investment provisions would result, in all probability, in further impairment. It seems clear that the settlor could not have known or anticipated the drastic change of circumstances which has taken place since the trust was created. Had he foreseen such change it is fair to say that in order to carry out the purposes of the trust, which were to provide income for the life interests and an undiminished corpus for his issue, he would not have so restricted investments as to defeat these purposes. In these circumstances "for the benefit of all interested and for the preservation of the corpus of the trust fund," exercise of the power to permit deviation is "clearly required." In re Bellah, Trustee, supra. Whatever significance can be attributed to the settlor's reference to "practicable" investment would merely serve to support exercise of the power.

The trustee will be granted authority to invest the corpus of the trust according to the provisions of 12 Del.C. § 3302, which designates proper trust investments.